ILLINOIS STATE POLICE, Plaintiff-Appellee, v. ILLINOIS STATE PO-LICE MERIT BOARD, Defendant-Appellee (Darylann Baron, Defendant-Appellant and Cross-Plaintiff-Appellant; Illinois State Police *et al.,* Cross-Defendants-Appellees).

First District (6th Division)   No. 1—91—1415

Opinion filed September 4, 1992.

John M. Hosteny, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

Appellant Darylann Baron appeals the decisions of the circuit court which: (1) upheld an Illinois State Police Merit Board (Merit Board) decision which found that she had violated a rule of conduct, but remanded the decision for the imposition of a sanction, which the Merit Board did not initially impose; and (2) upheld the Merit Board's subsequent imposition of the sanction of discharge. We affirm as to the decision that appellant violated the rule of conduct, but reverse the reversal of the Merit Board's original decision not to impose sanctions.

The pertinent facts are as follows. Appellant was employed as a State trooper with the Illinois State Police (Department) from 1981 to 1991. She was terminated for unsatisfactory performance, to wit, inability to drive a squad car competently. On April 13, 1988, the Department filed a complaint with the Merit Board, charging appellant with violating rules of conduct 1—11 (unsatisfactory performance) (count I), 1—32 (use of department equipment) (count II), and 1—33 (operating vehicles) (count III). Appellant filed a motion to dismiss based upon the fact that she had already received discipline for a number of preventable automobile accidents which the Department included in its complaint. This motion was granted in part, and the allegations involving previous accidents for which she had been disciplined were stricken from the complaint.

The Department filed an amended complaint, count I of which alleged that Department training, testing and evaluations demonstrated appellant's inability to adequately operate a motor vehicle (unsatisfactory performance), and count III alleged violation of the operating vehicles rule of conduct. (There was no count II to the amended complaint, as count II of the original complaint had been dismissed on the Department's own motion.) A hearing officer heard testimony and took evidence on October 3 through 5, 1989. That testimony and evidence included the following.

After graduating from the Illinois State Police Academy (Academy) and completing her training with field training officers, appellant was assigned to solo patrol. During her time assigned to solo patrol, she was involved in numerous automobile accidents. In June of 1985, she was sent back to the Academy for remedial driver training, and following this, she was transferred in August of 1987 to a second stint with field training officers. Based upon her performance, and upon an evaluation conducted in December of 1987, appellant was suspended from employment on April 15, 1988.

Appellant testified that she had one preventable accident for which she received a written reprimand, while on solo patrol for District 19. During the years 1983-1986, she was involved in some half dozen accidents which were deemed preventable, and the disciplines she received for the accidents involved suspensions from work ranging from 2 to 10 days. Following an automobile accident in March of 1986, she was transferred to desk work. She testified that she did not wish to do desk work and repeatedly requested to be reassigned to a squad car. She wanted to go to District 17, where she felt that she could better deal with lower volume traffic. Once transferred to Dis-

trict 17, she was involved in one accident when she struck a deer en route to a State Police retirement party.

Appellant acknowledged that she did not do well in her driving course at the Academy, and she herself requested an additional driving course, which the State paid for. She felt that she would be happier in a division of the Department which did not involve as much patrol driving. Appellant did not find police work stressful, except when it involved automobile chases. She acknowledged that she needs further instruction in driving and wishes to improve her driving ability.

Sgt. Steven Yenchko, an Academy instructor who worked with appellant, testified at the hearing. He found her driving skills below average, based upon her problems with "perception and judgment" and "slow reflexes." Appellant did not respond quickly enough and did not properly maneuver lane changes. She tended to brake an automobile either too soon or too late, and had trouble determining the distance required to sufficiently slow her vehicle when making left-hand turns. When he was riding with her, her performance as a driver was adequate, but when he did not cue her and give her supervision, she had problems correlating multiple tasks at the wheel.

A December 4, 1986, office memorandum documenting appellant's driving profile revealed that she had received a "satisfactory" rating while at the Academy. During the 1981 field training officer program, there were numerous weeks when her performance was rated as "unacceptable," as she was nervous and committed various driving violations. The memorandum indicated that during her week of remedial training she demonstrated below average driving skills.

Sgt. William Hanna, the coordinator for District 17, testified that appellant did her field training officer training at District 17 in 1981 and 1987. In 1987, after appellant had finished 14 weeks in the program, he and other training officers recommended that she be held for further training due to her problems stopping at stop signs and slowness in pursuit and answering radio calls. After 27 weeks in the program, she was released to drive on her own if she passed the defensive driving course.

Several other State troopers testified regarding appellant's driving skills, rating them poor and below average in numerous respects, and relating specific instances of poor driving on her part. Other troopers, some of whom had not actually driven with appellant, testified that her driving skills were adequate. Trooper Kenneth Hall testified that he evaluated appellant in 1987 for a period of two days. According to Hall, appellant had some difficulties breaking and steering

properly, although her judgments were proper. While she improved in certain respects when he worked with her, she was "reflexively a little slower than average," and Hall thought she was not "comfortable driving in the kind of driving that may be necessary" for a State trooper. One trooper, Sgt. Hamilton, who had driven with appellant, testified that she was as good or better in her abilities as a trooper than other people on his team, and Hamilton thought it was a "travesty" that appellant was not currently performing her job.

Following the hearing, the Merit Board officer issued an order which found that the Department had proved by a preponderance of the evidence that appellant violated the unsatisfactory performance rule of conduct (count I). The officer further found, however, that the Department had not established the allegations of count III of the amended complaint, the operating vehicles rule of conduct. On January 19, 1990, the Merit Board itself adopted the conclusions of the officer. The Merit Board found that no sanctions were warranted, but did recommend remedial training for appellant. The Department filed a complaint for administrative review seeking reversal of the Merit Board's decision with respect to the nonimposition of sanctions. Appellant filed a cross-complaint seeking review of the underlying determination of violation of the unsatisfactory performance rule of conduct.

On October 29, 1990, the circuit court upheld the Merit Board's determination as to the violation of the rule of conduct, but reversed and remanded the Merit Board's decision with respect to sanctions, holding that this determination was arbitrary, unreasonable and unrelated to the requirements of service. Upon remand, the Merit Board requested new evidence of the parties in the form of any professional opinion concerning appellant's inability to perform her tasks, and information as to other available positions that do not require driving of a State trooper.

The Department submitted evidence to the effect that all State troopers must have the ability to assume an assignment requiring use of an automobile. Appellant submitted expert testimony to the effect that while appellant lacked certain abilities to be an effective patrol trooper, she had numerous other skills which would benefit the Department in nonpatrol capacities. The Merit Board ruled that respondent should be discharged from her employment with the Department, and the circuit court affirmed this decision on March 18, 1991.

The first issue we address is whether the Merit Board's determination that appellant had violated the unsatisfactory performance rule of conduct was error because it was either against the manifest

weight of the evidence or was irreconcilably inconsistent with the finding that claimant had not violated the operating vehicles rule of conduct.

In arguing that the Merit Board's finding of guilt is against the manifest weight of the evidence, appellant contends that the Department failed to establish a minimum level of driving ability from which it could be concluded that her own ability was less than satisfactory. Further, according to appellant, the evidence established that she was as competent a driver as the next trooper, and the evidence established that appellant was under a lot of stress during her retraining and evaluation, which must be taken into account in determining whether she performed satisfactorily.

The Department argues that the evidence appellant relies upon, at best, establishes that some members of the Department, who had not personally observed her poor driving, thought that she was a competent driver. Further, repeated evaluations and testing established her driving deficiencies, and she had previously received written reprimands and other disciplines for incidents occurring while at the wheel. The Department contends that it had no obligation to establish an objective level of satisfactory driving.

The law applied to proceedings on administrative review is well settled. In *Martin v. Thompson* (1990), 195 Ill. App. 3d 43, 49, 551 N.E.2d 1082, the court observed:

"Upon judicial review of an administrative decision, a reviewing court is limited to determining whether the decision is against the manifest weight of the evidence. [Citation.] Evaluating the credibility of witnesses and resolving conflicting evidence is within the province of the administrative body [citation], and its findings are deemed *prima facie* true and correct. [Citation.] A reviewing court is not permitted to reweigh the evidence or reassess the credibility of witnesses. [Citation.] That an opposite result is reasonable or that a court might have reached a different conclusion is insufficient grounds for disturbing an administrative determination. [Citation.] To reverse a decision of an administrative body, a reviewing court must 'conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident.' [Citation.]"

■ Applying these principles to the present case, it is clear the Merit Board's determination that appellant had violated the unsatis-

factory rule of conduct was not against the manifest weight of the evidence. That rule requires the Department to establish that appellant failed to maintain "sufficient competency to properly perform [her] duties and assume the responsibility of [her] position." Inability to perform assigned tasks is one way in which the rule of conduct is violated. The testimony at the hearing was replete with opinions, based upon personal experience, that appellant was a below average driver, who had difficulty performing numerous maneuvers necessary for her position as a State trooper. Particularly critical of appellant's driving skills were Sgts. Yenchko and Hall. While some witnesses, as appellant points out, did not criticize her driving skills, it is the administrative body's function to determine conflicting evidence.

Nor does appellant's contention that the Department failed to establish a standard from which she could be judged unsatisfactory in her performance have force. She cites no authority for this proposition, and the existence of the satisfactory standard is implicit in the testimony criticizing her driving abilities. Here, as the opposite conclusion is not clearly evident, we hold that the Merit Board's finding that appellant violated the unsatisfactory performance rule of conduct is not against the manifest weight of the evidence.

Appellant next contends that the Merit Board's finding that she violated the unsatisfactory performance rule of conduct may not stand because the Merit Board found that the Department had failed to establish that she violated the operating vehicles rule of conduct. According to appellant, the finding on the unsatisfactory performance count (count I) of the amended complaint cannot stand as the Merit Board found that the Department had failed to establish appellant's violation of count III, and both counts were predicated on her alleged preventable accidents at the wheel. Appellant cites a number of criminal cases involving inconsistent verdicts in support of this argument.

The Department responds that the rulings on counts I and III are not inconsistent because count I was a general rule of conduct, while count III required proof of specific incidents. The hearing officer, in fact, prevented the Department from introducing evidence to establish the specific incidents for the reason that appellant had already been disciplined for the accidents.

■ The record supports the conclusion that the hearing officer did not hear evidence on the allegedly preventable accidents for the purpose of ruling on count III. Appellant had filed a motion to dismiss the initial complaint based upon the fact that she had already been disciplined for the allegedly preventable accidents, and those allegations were stricken. With respect to the amended complaint, the hear-

ing officer's decision states: "The hearing officer notes that paragraph 5 of Count I and Count III contain the same allegations regarding the eight preventable accidents of the Respondent that were dismissed by the previous Hearing Officer. As a result, those paragraphs of the Second Amended Complaint are hereby dismissed and evidence regarding those allegations is not considered here."

Thus, the underlying premise of appellant's argument is false, namely: that the Merit Board actually determined that she had not violated the operating vehicles rule of conduct due to the Department's failure to establish her record of poor driving based upon the allegedly preventable accidents. Moreover, the unsatisfactory performance rule of conduct specifically took into account factors such as evaluations and written records of infractions on the part of a respondent, factors not at issue in the operating vehicles rule of conduct, which suggests that the two findings on the counts would not have been inconsistent had they, in fact, been litigated.

■ We next address whether the circuit court erred in reversing and remanding the Merit Board's initial decision based upon the Merit Board's decision not to impose sanctions upon appellant.

The Department contends that the Merit Board's initial decision not to impose sanctions on appellant was arbitrary and unreasonable and thus the circuit court was correct to reverse on this ground. The Department argues, without any supporting explanation, that if no sanctions were imposed, appellant would have been permitted to drive. However, the Department ignores the fact that the Board recommended remedial training to appellant in its decision. The Department also contends that the initial Merit Board decision allowed claimant to continue in a job she could not perform. This argument also ignores the recommendation of remedial training. Finally, the Department contends that if appellant received no discipline, she would have no incentive to perform in a satisfactory manner.

Appellant contends that the Merit Board's determination should have been accorded appropriate deference and was not improper under the facts of this case, which involve no charge of intentional misconduct, some supportive testimony of other troopers, and appellant's willingness to continue her efforts to improve her performance.

The Department has cited no authority to suggest that in a given case, the Merit Board must impose a sanction after there has been a charge established against a respondent. The Department has cited no authority which is analogous to the case at bar. The authority the trial court relied upon does not establish that the Merit Board must impose

discipline upon a respondent; rather, it involves review of whether the sanction of discharge was arbitrary or unreasonable.

A reviewing court's role is not, as appellant points out, "that of a supercommission, which may substitute its judgment as to the more fitting sanction." (*Launius v. Board of Fire & Police Commissioners* (1991), 211 Ill. App. 3d 545, 556, 570 N.E.2d 532.) In fact, 80 Ill. Adm. Code §150.680 (1991) provides that the Merit Board, when entering an order finding a law enforcement officer guilty of an accusation, "*may* order the officer's discharge, demotion, or a suspension for a period of time \*\*\*, *or* recommend participation in a rehabilitative program \*\*\*, whichever in the opinion of the Board is most applicable." (Emphasis added.) Such discretionary language is authority for the proposition that the Merit Board had the authority to enter a finding of guilty, but not impose a sanction.

The trial court's reasoning, in reversing the matter for imposition of a sanction, appears to have been that it was arbitrary and unreasonable to not impose a sanction against this trooper, because she cannot do her job well. Thus, it would appear, the trial court can only have intended that appellant be discharged, as if appellant simply cannot do her job, no other sanction, such as demotion or suspension, would cure the perceived anomaly of a trooper who cannot drive. In fact, at oral argument, the Department contended that even if appellant had been suspended, that determination would have been against the manifest weight of the evidence.

The Merit Board, however, the expert body in such cases, determined that discharge was not appropriate, but rather recommended remedial training, which would fit within a broad definition of "rehabilitative program" under the Administrative Code. Given that the Department does not argue that the Board has no authority to not discharge an employee found guilty of unsatisfactory performance, and that the only cases which tend to disturb administrative sanction against employees *lessen*, rather than increase, imposed sanctions (including *Walsh v. Board of Police & Fire Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115, which the trial court relied upon), we hold that the initial Merit Board decision should not have been remanded for imposition of sanction.

Given our disposition on the issue of the initial Merit Board determination, we need not address the new evidence put forth upon remand, or whether the subsequent sanction of discharge was not warranted. In holding as we do, moreover, we do not suspect that an unsafe driver will be released upon this State's highways, as the Department implied at oral argument. No testimony to this effect has

been cited in the record, and should the Department feel that public safety is threatened, it may well bring new charges against appellant. Our result is bottomed upon proper deference to the Merit Board. Indeed, had the Merit Board's original sanction been discharge we may well have left it undisturbed, based upon a duly deferential attitude to the Merit Board's decision.

Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

EGAN, P.J., and McNAMARA, J., concur.