NO. 4-01-0739

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

           Plaintiff-Appellee,

           v.

ERICK JOHNSON,

           Defendant-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Champaign County

  No. 01CF331

  Honorable

  Jeffrey B. Ford­,

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

In February 2001, the State charged defendant, Erick Johnson, with unlawful possession of a controlled substance with the intent to deliver.  In April 2001, defendant filed a motion to suppress evidence based upon an alleged illegal strip search, which the trial court denied.  In June 2001, a jury found defendant guilty.  Thereafter, the trial court sentenced defendant to 15 years' imprisonment.

On appeal, defendant argues (1) the trial court erred in denying his motion to suppress; (2) he received ineffective assistance of counsel based on his attorney's alleged conflict with a codefendant; (3) the trial court erred in denying his motion for a directed verdict and the jury's guilty finding was based on insufficient evidence; and (4) the jury erred in finding defendant guilty based on the lack of expert testimony indicating the chromatography mass spectrometer was working properly.  We affirm.

I. BACKGROUND

In February 2001, the State charged defendant by information with one count of unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(2) (West 2000)), alleging he knowingly and unlawfully possessed 5 grams or more but less than 15 grams of a substance containing cocaine with the intent to deliver.  Thereafter, defendant pleaded not guilty and requested a jury trial.

In April 2001, defendant filed a motion to suppress the State's intended evidence of (1) 15 bags of crack cocaine and (2) United States currency.  Defendant argued law enforcement personnel subjected him to an unreasonable and unlawful strip search that went beyond the scope of a search incident to a lawful arrest.

In May 2001, the trial court conducted a hearing on defendant's motion to suppress.  Harvey Welch acted as attorney for defendant and the codefendant, Otto Taylor. 

Kary Keleher, an officer with the Urbana police department, testified he and Officer Jay Loschen initiated a traffic stop of a vehicle on February 23, 2001, after the driver disobeyed a traffic sign.  After an identification check, the officers learned defendant, a passenger in the vehicle, had a civil warrant for which he was thereafter arrested.  Following his arrest, the officers took him to the Champaign County correctional center.  Later, Officer Loschen and Officer James Black conducted a strip search of defendant in a shower room.  A large bag containing several smaller individual plastic bags containing 15 rocks of crack cocaine was found during the strip search of defendant.

Officer Loschen testified he arrested defendant on the civil warrant.  Thereafter, he conducted a search of defendant and found nothing.  Officer Loschen testified he and Officer Black conducted the strip search of defendant and recovered the suspected cocaine from defendant's underwear.  He stated the search was performed for reasons of evidence and safety.   Following arguments, the trial court found the police arrested defendant on a civil warrant.  The court also concluded Officer Loschen had a reasonable belief that defendant was concealing a controlled substance and was entitled to proceed with the strip search.  The court then denied defendant's motion to suppress.

In June 2001, defendant's jury trial commenced.  Officer Keleher again testified to the traffic stop on February 23, 2001.  He stated he was Officer Loschen's field-training officer at that time.  The occupants of the car included the driver Jermaine Wilson, defendant, seated in the front passenger seat, and Otto Taylor, sitting in the backseat on the passenger side.  Following an identification check on defendant, the officers were advised of a valid civil warrant.  Defendant was subsequently arrested and searched.  The search of defendant revealed United States currency in his pockets.  The officers then transported defendant to the jail.  Officer Keleher testified his search of the vehicle did not reveal any pipes or other devices that would be used in smoking or ingesting crack cocaine.  In his experience, Officer Keleher stated crack cocaine is commonly used in an amount referred to as a "$10 rock."  He stated the "rocks" are usually packaged individually using the corners of plastic sandwich bags.  

Officer Loschen testified he arrested defendant on his civil warrant and conducted a search resulting in the recovery of $291.  After transporting defendant to the jail, Officer Loschen informed defendant he was going to conduct a strip search.  During the search of defendant, Officer Loschen discovered 15 individual packages of a white, chunky substance in defendant's underwear, which he suspected to be crack cocaine.  Officer Loschen indicated his search of defendant and the other occupants of the vehicle did not reveal any devices that could be used for smoking cocaine.  After the search of defendant at the jail, Officer Loschen testified defendant made the spontaneous statement: "You got me.  Call the State's Attorney and I will plead now."

James Black, a correctional officer at the Champaign County correctional center, testified he participated in the search of defendant in the shower room along with Officer Loschen.  He observed the recovery of a "little bag" from defendant's underwear area.

John Martin, a forensic scientist employed by the Illinois State Police Bureau of Forensic Science, testified as an expert in forensic chemistry for controlled substances and cannabis.  He indicated he tested two larger bags and a smaller bag containing a white, chunky substance weighing 8.8 grams.  He also weighed the remaining 12 bags, which totaled 2 grams.  Martin performed "color tests" on a portion of the 8.8 grams and found an indication of cocaine present in the powder.  Then he performed a confirmatory analysis using an infrared spectrophotometer and a gas chromatograph mass spectrometer.  Those tests revealed the presence of a cocaine base.  Martin opined, based upon a reasonable degree of scientific certainty, that the 8.8 grams contained cocaine as its base.  He did not perform tests on the other 2 grams found in the 12 bags.

Following the conclusion of the State's case and at the close of all the evidence, defendant moved for a directed finding, which the trial court denied.  Defendant rested without presenting any evidence.  Following closing arguments, the jury found defendant guilty of possession with intent to deliver a controlled substance.  In July 2001, defendant filed a motion for a new trial, which the trial court denied.  Following a sentencing hearing, the trial court sentenced defendant to 15 years' imprisonment.  This appeal followed.

II. ANALYSIS

A. State's Motions

Initially, we consider the State's motion to supplement the record on appeal and its motion to correct the motion to supplement the record on appeal.  These motions are allowed, and our review of the record indicates a body attachment in Champaign County case No. 00-F-434 was issued against defendant on February 8, 2001.

B. The Trial Court's Denial of Defendant's Motion To Suppress

Defendant argues the trial court erred in denying his motion to suppress because (1) the police had no authority to ask for his identification and perform a computer search; and (2) the officer's strip search violated his constitutional rights and Illinois law.  We disagree.

First, we find defendant's argument concerning the officer's request for his identification to be forfeited.  Failure to raise a contention in a motion to suppress results in forfeiture of the issue.  
People v. Johnson
, 250 Ill. App. 3d 887, 892, 620 N.E.2d 506, 511 (1993).  Defendant failed to argue the propriety of the identification check in his motion to suppress or at the hearing; instead, he structured his focus on the constitutionality of his strip search.  To preserve an argument for appeal from a jury trial, the defendant's "challenge must be presented to the trial court not only at the motion to suppress stage, but it must also be included in the defendant's post[]trial motion."  
Johnson
, 250 Ill. App. 3d at 893, 620 N.E.2d at 511.  Such a requirement allows the court of review the benefit of the trial court's judgment on the issue under contention.  
Johnson
, 250 Ill. App. 3d at 893, 620 N.E.2d at 511.  Here, defendant failed to include his argument on this issue in his motion to suppress and his posttrial motion.  Thus, defendant has failed to properly preserve this issue for review.

Second, we find the trial court did not err in denying defendant's motion to suppress.  Defendant argues the strip search violated section 103-1(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-1(c) (West 2000)).  We disagree.

Statutory construction is a matter of law and our review is 
de
 
novo
.  
People v. Slover
, 323 Ill. App. 3d 620, 623, 753 N.E.2d 554, 557 (2001).  
Section 103-1(c) of the Code states:

"No person arrested for a traffic, regulatory[,] or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon or controlled substance."  725 ILCS 5/103-1(c) (West 2000).

In this case, defendant was arrested on a civil warrant for failure to appear in Champaign County case No. 00-F-434.  Thereafter, defendant was to be placed in the general population of the county jail.  Although defendant claims the strip search violated section 103-1(c), we find another provision of the Code forecloses his argument.  Section 103-1(j) of the Code states "[t]he provisions of subsections (c) through (h) of this [s]ection shall not apply when the person is taken into custody by or remanded to the sheriff or correctional institution pursuant to a court order."  725 ILCS 5/103-1(j) (West 2000).  Thus, the provisions of section 103-1(c) do not apply to sheriff and jail officials when a person is taken into custody by or remanded to them pursuant to court order.  As defendant was lawfully taken into custody pursuant to court order, his claim that the strip search violated section 103-1(c) of the Code fails.

Defendant also argues the strip search violated his federal and state constitutional rights.  We disagree, finding the search reasonable in this case.  The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution prohibit unreasonable searches and seizures.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.  "Strip searches are not 
per
 
se
 illegal or unconstitutional."  
People v. Orsby
, 286 Ill. App. 3d 142, 151, 675 N.E.2d 237, 243 (1996).  Notwithstanding, strip searches amount to a "severe intrusion into one's privacy."  
People v. Seymour
, 84 Ill. 2d 24, 39, 416 N.E.2d 1070, 1077 (1981).  However, courts have approved strip searches as incident to a lawful arrest without a showing of probable cause and as a search prior to incarceration.  
Seymour
, 84 Ill. 2d at 39-40, 416 N.E.2d at 1077.  Further, "[a]lthough one confined to a jail does not lose his constitutional rights, they are, nonetheless, diminished by the needs of the institutional environment."  
Seymour
, 84 Ill. 2d at 39, 416 N.E.2d at 1076.

In 
Bell v. Wolfish
, 441 U.S. 520, 561, 60 L. Ed. 2d 447, 483, 99 S. Ct. 1861, 1886 (1979), the United States Supreme Court found the strip searches and visual body cavity inspections of inmates who had contact with visitors were "reasonable responses *** to legitimate security concerns."  The Supreme Court stated in part, as follows:

"The test of reasonableness under the [f]ourth [a]mendment is not capable of precise definition or mechanical application.  In each case[,] it requires a balancing of the need for the particu­lar search against the invasion of personal rights that the search entails.  Courts must consider [(1)] the scope of the particular intrusion, [(2)] the manner in which it is conducted, [(3)] the justification for initiating it[,] and [(4)] the place in which it is conducted. [Citations.]  A detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."  
Bell
, 441 U.S. at 559, 60 L. Ed. 2d at 481, 99 S. Ct. at 1884.

The Illinois Supreme Court found "officials in charge of the jail have a strong interest in preventing contraband drugs and especially weapons from entering the lockup."  
Seymour
, 84 Ill. 2d at 39, 416 N.E.2d at 1076.  In that regard, the court, quoting 
United States v. Klein
, 522 F.2d 296, 300-01 (1st Cir. 1975), stated "'the modesty of one lawfully arrested must give way to reasonable precautionary procedures designed to detect hidden evidence, drugs, or objects which might be used against others or to cause self-inflicted harm.'"  
Seymour
, 84 Ill. 2d at 40, 416 N.E.2d at 1077. 

In this case, the officers made a lawful arrest of defendant based on his civil warrant and transported him to the county jail, where Officer Keleher stated defendant would be placed with other arrestees in a common holding area.  Officer Loschen stated that regardless of the result of the strip search, defendant was going to be booked and placed in holding cells with other arrestees.  Thus, defendant's placement in the general jail population was imminent.  He also testified the strip search was conducted to search for evidence and for safety reasons.  Officer Loschen stated he received authority from command personnel to conduct the search, which took place in a shower room with Officer Black present.

In 
People v. Calvert
, 326 Ill. App. 3d 414, 424, 760 N.E.2d 1024, 1032 (2001), this court held that based on "the substantial need to ensure institutional security, good penal practices not only permit, they require strip searches before placing detainees into the general jail population."  Jails and correctional officials have a legitimate and substantial need, along with a corresponding duty, to prevent arrestees from smuggling weapons or contraband into a detention facility.  The practice of strip searching detainees before their intermingling with the general jail population is a necessity for the health and safety of the arrestee, other inmates, and the correctional officers.  See 
Calvert
, 326 Ill. App. 3d at 424, 760 N.E.2d at 1032 (other inmates and officers could be at serious risk if detainees are not searched before placement in general jail population).  Based on the security and safety concerns involved with placing a detainee into the general population, we conclude the strip search here was reasonable.  Courts must not deprive jail and prison officials of the power to conduct a full search because doing so "would seriously impede such administrators as they attempted to protect their inmate populations."  
Calvert
, 326 Ill. App. 3d at 424, 760 N.E.2d at 1032.  As we find the strip search of defendant reasonable incident to his placement among the general jail population, we need not address whether the search was also lawful incident to defendant's arrest.  See 
Calvert
, 326 Ill. App. 3d at 424-25, 760 N.E.2d at 1032.

C. Assistance of Counsel

Defendant argues he received ineffective assistance of counsel, citing his attorney's alleged conflict with a codefendant.  We disagree.

A criminal defendant's sixth amendment right to effective assistance of counsel is a fundamental right.  
Cuyler v. Sullivan
, 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715 
(1980).  "The assistance of counsel means assistance which entitles an accused to the undivided loyalty of his counsel and which prohibits the attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations."  
People v. Washington
, 101 Ill. 2d 104, 110, 461 N.E.2d 393, 396 (1984).  An attorney's relationships with certain clients can create a conflict that adversely affects the outcome of the trial.  
People v. Coleman
, 301 Ill. App. 3d 290, 299, 703 N.E.2d 137, 143 (1998).  Our supreme court has found two classes of conflicts of interests that may encroach on a defendant's sixth amendment rights.  
People v. Spreitzer
, 123 Ill. 2d 1, 14-19, 525 N.E.2d 30, 34-37 (1988).

The first class involves a 
per
 
se
 conflict, which "exists where certain facts about a defense counsel's status, by themselves, are held to engender a disabling conflict."  
People v. Moore
, 189 Ill. 2d 521, 538, 727 N.E.2d 348, 357 (2000).  
Per
 
se
 conflicts are created when defense counsel has a "prior or contemporaneous association with either the prosecution or the victim."  
Spreitzer
, 123 Ill. 2d at 14, 525 N.E.2d at 34.  

"To obtain relief based on an alleged 
per
 
se
 conflict, a defendant must show only that counsel had a contemporaneous conflicting professional commitment to another; however, a defendant need not show prejudice. [Citations.]  For example, this court has held that a 
per
 
se
 conflict of interest exists where defense counsel engages in a contemporaneous representation of the defendant and the State's witness."  
Moore
, 189 Ill. 2d at 538, 727 N.E.2d at 357.

In this case, we find no 
per
 
se
 conflict existed.  Here, defendant's attorney also represented codefendant, Otto Taylor, at the motion to suppress hearing.  Illinois courts have found that an attorney's simultaneous representation of two or more codefendants does not create a 
per
 
se
 violation of the right to effective assistance of counsel. 
 
People v. Lee
, 271 Ill. App. 3d 1093, 1096, 649 N.E.2d 457, 459 (1995); 
People v. Sanchez
, 161 Ill. App. 3d 586, 594, 515 N.E.2d 213, 218 (1987); see also 
People v. Becerril
, 307 Ill. App. 3d 518, 524, 718 N.E.2d 1025, 1029 (1999) (discussing waiver of such a conflict).
  In that regard, "[j]oint representation is permitted because '[a] common defense often gives strength against a common attack.'"  
Sanchez
, 161 Ill. App. 3d at 594, 515 N.E.2d at 218, quoting 
Glasser v. United States
, 315 U.S. 60, 92, 86 L. Ed. 680, 710-11, 62 S. Ct. 457, 475 
(1942) (Frankfurter, J., dissenting).  Based on this analysis, we proceed to the second class of conflicts.

The second class of conflicts of interest involves joint or multiple representation of codefendants.  
Spreitzer
, 123 Ill. 2d at 17, 525 N.E.2d at 36.  In this class, defense counsel brings the potential conflict to the trial court's attention at an early stage of the proceeding, whereupon the court has a duty to appoint separate counsel or determine whether the risk of conflict is too remote to require the appointment of counsel.  
People v. Holmes
, 141 Ill. 2d 204, 219, 565 N.E.2d 950, 956 (1990).  A conviction may be reversed in that case without "a showing of 'specific prejudice.'"  
Holmes
, 141 Ill. 2d at 219, 565 N.E.2d at 956, quoting 
Spreitzer
, 123 Ill. 2d at 17-18, 525 N.E.2d at 36, citing 
Holloway v. Arkansas
, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173
 (1978).  "However, if the trial court is not apprised of the potential conflict, then reversal of the conviction will only be had upon a showing that 'an actual conflict of interest adversely affected' counsel's performance."  
People v. Kitchen
, 159 Ill. 2d 1, 29, 636 N.E.2d 433, 446 (1994), quoting 
Cuyler
, 446 U.S. at 350, 64 L. Ed. 2d at 348, 100 S. Ct. at 1719
.

In this case, defendant cannot establish an actual conflict of interest adversely affected his counsel's performance.  Codefendant Taylor did not testify for the State or for the defense at defendant's jury trial.  Further, the trial court allowed defendant's motion 
in
 
limine
 as to Taylor's possible testimony regarding his activities involving the possession of cannabis found at the vehicle stop.  Defendant contends his counsel's representation of Taylor would hinder his willingness to call Taylor as a witness.  However, defendant's speculation does not establish his counsel's performance was adversely affected.  Defendant's defense consisted of conceding possession while denying any intent to deliver.  Calling Taylor as a witness could possibly have 
opened the door for the State to elicit testimony regarding the fruits of the illegal drug trade, including possession of marijuana.  Such testimony would have only added to the evidence establishing an intent to deliver a controlled substance.  Therefore, defendant's claim of ineffective assistance of counsel must fail.

D. The Trial Court's Denial of Defendant's Motion for Directed Verdict and the Jury's Guilty Finding

Defendant argues the trial court erred by failing to grant his motion for directed verdict and the evidence was insufficient
 to support the jury's finding of guilt beyond a reasonable doubt.  We disagree.

The making of a motion for directed verdict "requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond reasonable doubt, considering the evidence most strongly in the People's favor."  
People v. Withers
, 87 Ill. 2d 224, 230, 429 N.E.2d 853, 856 (1981); 
People v. Connolly
, 322 Ill. App. 3d 905, 914, 751 N.E.2d 1219, 1226 (2001).  A motion for a directed verdict presents a question of law subject to 
de
 
novo
 review.  
Connolly
, 322 Ill. App. 3d at 917-18, 751 N.E.2d at 1229.

To support a conviction for unlawful possession with intent to deliver a controlled substance, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the controlled substance, possession of the controlled substance, and the intent to deliver the controlled substance.  
People v. Robinson
, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995).

In closing argument, defense counsel conceded defendant was guilty of possession.  On appeal, defendant contends the State's circumstantial evidence failed to prove defendant's intent to deliver.  In a case involving unlawful possession with intent to deliver a controlled substance, "intent is a mental state seldom susceptible of direct proof but which must be inferred from circumstantial evidence."  
People v. Neylon
, 327 Ill. App. 3d 300, 310, 762 N.E.2d 1127, 1136 (2002).

"'This issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver.  In controlled substances prosecutions, many different factors are probative of intent to deliver.  Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption, the high purity of the drug confiscated, the possession of weapons, the possession of large amounts of cash, the possession of police scanners, beepers or cellular telephones, the possession of drug paraphernalia, and the manner in which the substance is packaged.  [Citation.]  The quantity of controlled substance alone can be sufficient to prove an intent to deliver.  This is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption.'"  
Neylon
, 327 Ill. App. 3d at 310, 762 N.E.2d at 1136, quoting 
People v. Beverly
, 278 Ill. App. 3d 794, 799, 663 N.E.2d 1061, 1065 (1996), citing 
Robinson
, 167 Ill. 2d at 408, 657 N.E.2d at 1026-27.

In the case 
sub
 
judice
, Officer Loschen's search of defendant revealed 15 individual packages of a white, chunky substance in his underwear, a portion of which was later determined to be crack cocaine.  He noted the rocks were individually wrapped in small plastic bags such as the corners of sandwich bags.  John Martin testified the substance totaled 10.8 grams.  Defendant had $291 on him at the time of the vehicle stop.  The evidence indicates defendant had a large amount of individually packaged rocks of crack cocaine stuffed in his underpants along with a substantial amount of cash.  These factors, including the quantity of drugs found, the packaging, and the large amount of cash, lead to the inference that defendant did not possess the cocaine for personal consumption but instead was intent on delivering it.

Defendant contends the absence of drug paraphernalia on defendant or in the car shows he lacked the intent to deliver.  However, paraphernalia, such as scales, cutting instruments, or packaging materials, would not be expected to be found in a moving vehicle in broad daylight.  Further, no drug paraphernalia used in personal consumption, such as pipes or other smoking devices, was found.  The lack of drug paraphernalia for personal consumption leads to the inference that defendant was intent on delivering the cocaine.  See 
Beverly
, 278 Ill. App. 3d at 802, 663 N.E.2d at 1067 (appellate court found intent to deliver based on weight of substance, packaging, cash found, and lack of drug paraphernalia associated with personal use).  Thus, considering the evidence in the light most favorable to the State, a reasonable mind could fairly conclude defendant was guilty beyond a reasonable doubt of possession with intent to deliver.  The trial court did not err in denying defendant's motion for a directed verdict.

Defendant also argues the jury had insufficient evidence to support a guilty finding of unlawful possession with intent to deliver.  We disagree.  It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence.  
People v. Ortiz
, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001).  
When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Brown
, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996).  

Our analysis of the sufficiency of the evidence to support the jury's guilty finding is identical to the analysis applied to the trial court's ruling on defendant's motion for a directed verdict.  Since defendant offered no evidence, our conclusion that the evidence was sufficient for the trier of fact to find guilt beyond a reasonable doubt remains the same.  

E. Expert's Testimony Based on Electronic or Mechanical Device

Defendant argues no foundation
 was laid regarding whether the infrared spectrophotometer and gas chromatography mass spectrometer (GCMS) machines were functioning properly.  We find defendant has forfeited this issue.

Defendant relies on 
People v. Raney
, 324 Ill. App. 3d 703, 710-11, 756 N.E.2d 338, 344-45 (2001), in which the First District reversed the defendant's conviction for unlawful possession with intent to deliver because the State failed to establish a proper foundation regarding the GCMS machine.  In that case, defense counsel contested the forensic scientist's expertise and moved for a directed finding based upon chain of custody and lack of proper foundation.  
Raney
, 324 Ill. App. 3d at 705, 756 N.E.2d at 340.  The defendant reiterated his foundation objection during closing argument.  
Raney
, 324 Ill. App. 3d at 705, 756 N.E.2d at 340.

The First District stated "'when expert testimony is based upon an electronic or mechanical device such as that used here [GCMS machine], the expert must offer some foundation proof as to the method of recording the information and proof that the device was functioning properly at the time it was used.'"  
Raney
, 324 Ill. App. 3d at 707, 756 N.E.2d at 341, quoting 
People v. Bynum
, 257 Ill. App. 3d 502, 514, 629 N.E.2d 724, 732 (1994).  The 
Raney
 court found the expert failed to offer any evidence the GCMS machine was functioning properly at the time the controlled substance was tested.  
Raney
, 324 Ill. App. 3d at 707, 756 N.E.2d at 342.  The appellate court found the State failed to establish the necessary foundation, which required reversal of defendant's conviction for unlawful possession with intent to deliver.  
Raney
, 324 Ill. App. 3d at 710-11, 756 N.E.2d at 344.

In 
Bynum
, the expert witness failed to testify to the general acceptance of the GCMS machine by experts in her particular field, how the machine was calibrated, or how she knew the results were accurate.  
Bynum
, 257 Ill. App. 3d at 514, 629 N.E.2d at 732.  The appellate court found the State's failure to establish a necessary foundation would have been sufficient to preclude the expert's testimony, "had defendant objected on these grounds."  
Bynum
, 257 Ill. App. 3d at 514, 629 N.E.2d at 732.  The court concluded that since defense counsel failed to object that the expert's testimony lacked sufficient foundation, the argument was forfeited on appeal.  
Bynum
, 257 Ill. App. 3d at 515, 629 N.E.2d at 732-33.  

In this case, defendant failed to object that Martin's testimony lacked sufficient foundation on whether the GCMS machine was working properly.  In closing argument, defense counsel indicated the evidence offered by the State was an illegal substance.
  
No argument on the issue of the GCMS machine appeared in defendant's posttrial motion.  "To preserve an issue for review, a defendant must both object at trial and specifically include the objection in a post[]trial motion."  
People v. Nieves
, 193 Ill. 2d 513, 524, 739 N.E.2d 1277, 1282 (2000).  
Raising the foundation issue at trial with "a timely and specific objection allows the State the reasonable opportunity to correct any deficiency in the foundation proof."  
Bynum
, 257 Ill. App. 3d at 514-15, 629 N.E.2d at 732.  Defendant failed to object at trial and has now forfeited his argument on appeal.

We also note that defendant did not contest the identity of the substance recovered as evidence in this case.  In closing argument, defense counsel conceded the issue of unlawful possession of a controlled substance.  "A party forfeits [his] right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding."  
In re E.S.
, 324 Ill. App. 3d 661, 670, 756 N.E.2d 422, 430 (2001), citing 
McMath v. Katholi
, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000).  Defendant is thus estopped from raising the foundation argument on appeal because is it inconsistent with the strategy pursued at trial.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.