THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRYAN TAYLOR, Defendant-Appellant.

Fifth District   No. 5—03—0214

Opinion filed April 19, 2005.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten, Stephen E. Norris, and T. David Purcell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Bryan Taylor, was convicted of three counts of aggravated criminal sexual assault and was sentenced to three consecutive 30-year terms of imprisonment, to run consecutively to a 55-year sentence he was serving at the time of the trial. He seeks the reversal of his convictions on the basis that the State failed to lay an adequate foundation for DNA evidence and expert opinion testimony, the only direct evidence linking him to the sexual assault. Our review of the record reflects that Taylor failed to preserve the error for review. Accordingly, his argument is waived and we affirm his convictions.

## I. BACKGROUND

In 1999, Taylor was charged by an amended information with three counts of aggravated criminal sexual assault for the 1995 assault of Sandra Thompson in Williamson County. Thompson, who had ac-

cidentally locked herself out of her mobile home, was attacked by Taylor as she walked toward town to use a pay phone. Taylor dragged her to a wooded area, laid her facedown, tied her hands to a tree with security ties, and assaulted her. Her infant, whom he had placed next to her, was unharmed. She wriggled loose and ran for help. Even though she saw her attacker approach from quite a distance, she never really saw his face because he attacked her from behind and wore a ski mask during the assault. It was also late in the evening and Taylor had removed her glasses from her face during the assault. As a result, Thompson was unable to identify her attacker from a police photo array in which Taylor was included.

The only evidence of the crime was Thompson's testimony, bruises and abrasions visible on her back, the security ties left at the scene, and fluid swabbed from her face that was later identified as semen. Hairs were found on some of the items at the scene, but they were never tested. Initially, the State conducted only limited testing and analysis of the semen because no suspect had been identified. Taylor was identified as a potential suspect almost five years later, at which time a DNA profile was developed from his blood. Further testing was also conducted on the semen swabbed from Thompson's face.

Our disposition in this case requires only a brief and general discussion of the DNA evidence. The preliminary DNA analysis of the semen swabbed from Thompson's face identified a profile consisting of four numerical loci (segments of DNA described by numbers). The profile was entered into a database to search for a consistent profile among known persons or pending the identification of a suspect in the future. Years later, after Taylor was identified as a suspect, additional testing was performed on the same semen sample. A fifth numerical locus was developed. Scientists also developed a five-loci profile from Taylor's blood. The DNA profile developed from the facial swabbing was compared to Taylor's DNA profile and deemed to be consistent.

Five forensic witnesses testified for the State at Taylor's trial: Glenn Schubert, Stacie Speith, Angela Riech, Joanna Olson, and Donna Rees. Only the last three provided technical DNA testimony regarding restriction fragment length polymorphism (RFLP), and only Olson and Rees were qualified as DNA experts by the trial court. Taylor's appeal involves the foundation laid by the State for the testimony given by Riech, Olson, and Rees. He also claims that a reversal is warranted because the State failed to put on the technician who performed the DNA testing after Taylor was identified as a suspect.

## Angela Riech

Riech performed limited testing on the facial swab prior to Taylor becoming a suspect in the case. She testified about the purpose and process of RFLP and that it was used in research and at other forensic laboratories. When asked what measures she followed in the lab to ensure the quality of her results, Riech testified that generally the Illinois State Police follows a strict quality assurance program incorporating standards and various controls. Her test results identified from the facial swab a four-loci DNA profile not belonging to Thompson. Taylor did not pose any objection to Riech's testimony on direct examination and performed only a very brief cross-examination.

## Joanna Olson

Olson was the State's primary DNA expert, yet she provided almost no foundation for her findings and opinion. Olson testified that she had obtained Riech's file, which consisted of Riech's test results, not the actual DNA sample. Olson performed her own testing using RFLP on Taylor's dried blood sample she had received from another source. She then compared Riech's results on the semen with her results on Taylor's blood. On direct examination she testified that she analyzed the same five loci that Riech had analyzed, and she opined that the semen swabbed from Thompson's face was consistent with having originated from Taylor. It was revealed during cross-examination, however, that Riech's report provided only a four-loci profile, not five—so the question posed was how Olson could compare five areas of DNA when Riech had developed only four. This irregularity was referred to by Taylor at the trial as an inconsistency in the evidence.

It was later determined (outside the jury's presence) that in 1999, after Taylor had been identified as a suspect, steps were taken to test and interpret a fifth locus. A scientist named Donna Rees had requested that additional testing be done to the membrane created by Riech from Thompson's facial swab. A technician (Rebecca Logeman) added a reactive agent to the membrane to develop the fifth locus, and those results were analyzed and interpreted by Rees in a different lab. A data sheet was produced as a result of Logeman's work but never made it to the case file; thus, its existence was not known by the State, and it was not provided to Taylor before the trial. Rees's report, however, did make it to Riech's case file, which was subsequently reviewed and relied upon by Olson. Essentially, Olson had stated in her report and at the trial that she had relied on Riech's report only (which involved only four loci), and she should have also cited Rees's

report (which involved a fifth locus). These issues were resolved during the trial outside the presence of the jury through intense and lengthy examination by the trial judge. They were later explained to the jury through additional direct examination and cross-examination.

The irregularity in Olson's report and initial testimony set the framework for Taylor's defense and provided the impetus for him to refrain from objecting to the weak foundation laid by the State. In fact, Taylor's counsel stated upon questioning by the trial judge that the "inconsistency" between Riech's and Olson's reports and testimony provided the backbone of his client's defense and that he refrained from examining the State's witnesses regarding lab procedures, analyses, and methodologies because he wanted the witnesses' testimony to remain inconsistent. In addition to capitalizing on the irregularity highlighted by Olson's testimony, Taylor claimed at the trial that he had not been aware of the testing performed by Logeman and that the State should have disclosed the log entry. This alleged discovery violation, and not the inadequate foundation of Riech's, Olson's, and Rees's opinions, formed the grounds for his motions and objections to follow.

Although virtually no foundation was laid for Olson's opinion that the DNA profiles were consistent, the record reflects that Taylor did not object to any of Olson's testimony. Subsequent to Olson's revelations during her initial cross-examination, however, Taylor did move to strike Riech's and Olson's testimony, and he alternatively moved for a directed verdict and for a new trial, which the trial court treated as a motion for a mistrial. The grounds for these motions were the irregularity in Riech's and Olson's reports and testimony and the alleged discovery violation. Taylor did not object to Olson's testimony because it lacked a foundation. The trial court denied all of Taylor's motions, emphasized Taylor's right to cross-examine all the State's witnesses regarding "errors, irregularities, and mistakes in their testimony or reports," and permitted Taylor the opportunity (which he declined) to inform the jury that he had not been provided the log entry involving the fifth locus until the trial.

## Donna Rees

Rees was called by the State to cure the irregularity presented by Olson's initial testimony. Rees testified that after Taylor had been identified as a suspect, she requested that additional testing be done to the membrane containing DNA taken from Thompson's facial swab, to develop a fifth locus. Only the Illinois State Police's lab in Springfield was capable of performing the type of test in use at the

time, so the fifth locus was developed there and the data was sent to Rees at another lab for her interpretation. Using Riech's four-loci DNA profile and the fifth locus subsequently developed from the same semen sample, Rees determined that the five-loci profile identified from the semen swabbed from Thompson's face would occur in approximately 1 in 360 billion Caucasians, 1 in 86 billion African Americans, or 1 in 1.5 trillion Hispanics, taken from a pool of unrelated, randomly selected individuals. (Taylor is a Caucasian.) Rees performed the same statistical computer analysis on the four-loci DNA profile developed by Riech, leaving out the fifth locus. She determined that the four-loci profile identified from the semen swabbed from Thompson's face would occur in approximately 1 in 3 billion Caucasians, 1 in 430 million African Americans, or "104.1 [sic] billion Hispanics," from a randomly selected, unrelated population. Rees did not perform any independent tests; she interpreted results obtained by other technicians.

She provided minimal foundational support for data in Riech's file, and none for her own analysis, findings, and opinions. The only objection posed by Taylor was in response to a question limited to the fifth locus. She was asked if she could conclude whether the data provided to her regarding the fifth locus was "done correctly." Taylor objected on the bases that Rees had not observed the test being performed and that Logeman, who had done the test, had not been called as a witness. The objection was overruled.

### Evidentiary and Posttrial Motions and Rulings

The State moved to admit its evidence immediately prior to resting its case, and Taylor objected on two grounds to the admission of a lumigraph depicting the fifth locus. First, he reiterated his argument that the State had violated discovery rules by not producing the log entry created when Logeman developed the fifth locus from the membrane created by Riech. Second, he posed an "authenticity objection" because the State had not called Logeman as a witness. Taylor did not pose any objection to any of the State's exhibits on the basis that the procedures or methods used by Riech, Olson, or Rees were inadequate or unreliable. He also did not object to any of the State's exhibits on the basis that Riech's, Olson's, or Rees's findings and opinions lacked a proper foundation. The trial court admitted the exhibit over Taylor's objection.

The jury returned guilty verdicts on all three counts, and the trial court entered a judgment thereon. Thereafter, Taylor filed a motion for a new trial. In his written motion, he argued generally that the

State had failed to present sufficient evidence at the trial for the jury to properly render a verdict against him beyond a reasonable doubt and that the trial court had improperly denied his motions to strike Riech's testimony and for a mistrial. At the hearing on his motion, Taylor argued that he had sufficiently impeached the State's DNA expert witnesses with their inconsistent statements to prevent a jury from returning a guilty verdict. Neither in his written motion nor at the hearing did Taylor specifically attack the deficient foundation laid by the State for its expert witnesses' reports and testimony.

## II. ANALYSIS

On appeal, Taylor contends that the State failed to establish a foundation for the DNA evidence and that the evidence was insufficient to convict him beyond a reasonable doubt because it was the only evidence that connected him to the crime. Specifically, Taylor seeks a reversal of his convictions because the State did not establish that the testing methods used on the DNA evidence were reliable and because Logeman did not testify regarding her role in developing the fifth locus. The State contends that Taylor waived his argument because he failed to make appropriate objections during the trial and in his posttrial motion concerning the lack of proper foundation.

We agree with the State that Taylor failed to make the proper objections at the trial and failed to raise them in his posttrial motion. To the contrary, Taylor informed the trial court during the trial that he never intended to challenge the accuracy of the State's witnesses' findings, so he could capitalize on the impact the irregularity in the evidence would have on the jury. Having failed to preserve the specific error claimed here, Taylor attempts to circumvent the waiver rule by characterizing his challenge as an attack on the sufficiency of the evidence. See *People v. Enoch*, 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1131-32 (1988). At the time of oral argument before this court, there was dissension in the case law regarding whether the lack of a foundation could render the State's evidence insufficient to convict and thereby negate a waiver argument on appeal. The following cases supported Taylor's position: *People v. Raney*, 324 Ill. App. 3d 703, 756 N.E.2d 338 (2001), and *People v. Rucker*, 346 Ill. App. 3d 873, 889-90, 803 N.E.2d 31, 44 (2003). Cases supporting the State's position indicating a waiver included the following: *People v. Bynum*, 257 Ill. App. 3d 502, 513-15, 629 N.E.2d 724, 732-33 (1994); *People v. Johnson*, 334 Ill. App. 3d 666, 678-80, 778 N.E.2d 772, 783-84 (2002); *People v. DeLuna*, 334 Ill. App. 3d 1, 19-21, 777 N.E.2d 581, 598-99 (2002); *People v. Hill*, 345 Ill. App. 3d 620, 630-33, 803 N.E.2d 138, 147-49 (2003); *People v.*

*Besz,* 345 Ill. App. 3d 50, 802 N.E.2d 841 (2003); *People v. Garth,* 353 Ill. App. 3d 108, 118, 817 N.E.2d 1085, 1094 (2004); *People v. Durgan,* 346 Ill. App. 3d 1121, 1131, 806 N.E.2d 1233, 1240 (2004); and *People v. Peppers,* 352 Ill. App. 3d 1002, 1010, 817 N.E.2d 1152, 1159-60 (2004). However, a recent opinion issued by the Illinois Supreme Court disposes of the issue in the State's favor. *People v. Bush,* 214 Ill. 2d 318 (2005).

The defendant in *Bush* argued that the State failed to prove her guilty beyond a reasonable doubt because it failed to lay an adequate foundation for an expert's opinion that the substance recovered was cocaine. She argued that absent proof that the testing equipment was functioning properly and that the testing data was accurately recorded and interpreted, there was no basis for concluding the expert's opinion was reliable. The defendant in *Bush* conceded she did not object at the trial, but she argued that her foundational challenge was not waived because it attacked the sufficiency of the evidence rather than the admissibility of the expert's opinion. *Bush,* 214 Ill. 2d at 330. The supreme court rejected this argument, finding that a defendant's failure to challenge an inadequate foundation by raising an objection at the trial and in a written posttrial motion waives the issue for review. *Bush,* 214 Ill. 2d at 332.

In this case, Taylor argues that Riech's testimony lacked an adequate foundation because she merely testified that the Illinois State Police follows a strict quality assurance program using standards and various controls. He next argues that Olson did not testify regarding her testing procedures, the studies she used, or how she determined her results were reliable. As we point out above, Taylor did not pose any objections whatsoever to the admission of either witness's opinion or testimony. Although he did object to one question posed to Rees, our reading of the record reflects that Taylor did not challenge the accuracy of Rees's analysis and findings even though Rees had provided very little foundational support for the processes she employed. The objection Taylor did pose is not so broad to encompass the spectrum of foundational deficiencies in Rees's testimony. Additionally, Taylor's written posttrial motion is bereft of any reference to a lack of a foundation for any of the State's DNA evidence.

Taylor did not make the proper objections at the trial, nor did he raise a lack of a foundation in his written posttrial motion. Under *Bush,* he waived the issue for review and cannot avoid waiver by arguing that the inadequate foundation laid by the State rendered the State's evidence insufficient to convict him. *Bush,* 214 Ill. 2d at 333.

We acknowledge that *Bush* involved a *stipulation* to opinion expert

testimony. This distinction, however, has no effect on the outcome here. The *Bush* court, in arriving at its decision, discussed both types of cases—those involving trial stipulations to expert testimony with a later claim of an inadequate foundation and those involving a failure to object to an inadequate foundation at the trial. The court concluded that both scenarios amounted to waiver. *Bush*, 214 Ill. 2d at 334-35 (the court discussed *People v. Jones*, 16 Ill. 2d 569, 158 N.E.2d 773 (1959), *People v. Richardson*, 123 Ill. 2d 322, 528 N.E.2d 612 (1988), and *People v. Jones*, 60 Ill. 2d 300, 325 N.E.2d 601 (1975)). We, too, find this to be a distinction without a difference. "[W]hen a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, she cannot contest the admission on appeal." *Bush*, 214 Ill. 2d at 332. This is because in each of these situations the State is deprived of the opportunity to cure the alleged defect. *Bush*, 214 Ill. 2d at 332.

The instant case fits squarely within this legal precept. Taylor's counsel pursued a trial strategy where he deliberately refrained from examining the State's witnesses regarding their procedures, analyses, and methodologies in hopes that the witnesses' testimony would appear inconsistent. The defendant cannot be heard now on this issue.

### III. CONCLUSION

Accordingly, we find that the defendant, Bryan Taylor, waived his argument that the State's DNA evidence lacked an adequate foundation, and we affirm his convictions for aggravated criminal sexual assault.

Affirmed.

HOPKINS and KUEHN, JJ., concur.