NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231002-U

NO. 4-23-1002

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| MICHELLE L. SON, | ) | No. 23CF212 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Chris R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) the trial court did not abuse its discretion in admitting other-crimes evidence for the limited purpose of establishing defendant's intent and (2) defendant was not denied the right to a fair sentencing hearing when the court considered generalized harm to the community as an aggravating factor in sentencing.

¶ 2    On August 8, 2023, a jury convicted defendant, Michelle L. Son, of unlawful possession of 15 or more grams but less than 100 grams of methamphetamine with intent to deliver (720 ILCS 646/55(a)(1) (West 2022)) and unlawful possession of the same amount of methamphetamine (720 ILCS 646/60(a) (West 2022)). The trial court sentenced defendant to 11 years in prison. Defendant appeals, arguing the court (1) abused its discretion by admitting certain other-crimes evidence and (2) denied her right to a fair sentencing hearing. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                           A. Defendant's Charges

¶ 5        On March 27, 2023, the State charged defendant with one count of unlawful possession of 15 or more grams but less than 100 grams of methamphetamine with intent to deliver (720 ILCS 646/55(a)(1) (West 2022)) and one count of unlawful possession of the same amount of methamphetamine (720 ILCS 646/60(a) (West 2022)). The grand jury returned a true bill of indictment for these charges on April 20, 2023, and the case was set for trial.

¶ 6                        B. The State's Motion *in Limine*

¶ 7        Before trial, the State filed a motion *in limine* requesting the trial court admit evidence of "other crimes" committed by defendant. Specifically, the State sought to admit communications between defendant and others discussing methamphetamine sales as evidence of her "intent, knowledge, *modus operandi*, and state of mind." These communications consisted of messages defendant exchanged with Steven Nunnally and Jay Diegel regarding methamphetamine sales. Defendant's counsel contended this was inadmissible propensity evidence, factually dissimilar to the evidence in the present case, and would be unduly prejudicial.

¶ 8                     1. *Hearing on the Motion in Limine*

¶ 9                       a. Detective Justin Fitzgerald

¶ 10       Detective Justin Fitzgerald of the Pekin Police Department had previously conducted hundreds of investigations into the manufacture and distribution of methamphetamine. Detective Fitzgerald's familiarity with defendant began at some point between 2009 and 2011. According to Detective Fitzgerald, defendant was identified at that time by multiple sources as engaging in "pill farming" or "pill smurfing," meaning she provided pseudoephedrine pills to people who manufactured methamphetamine.

¶ 11 In 2019, Detective Fitzgerald investigated defendant (among other people) for trafficking methamphetamine from other states into Illinois. In 2021, while investigating Nunnally for methamphetamine-related offenses, Detective Fitzgerald discovered defendant was communicating with Nunnally through Facebook Messenger regarding methamphetamine sales. Additionally, police obtained messages defendant exchanged with Diegel regarding such sales. Detective Fitzgerald explained that based on his experience and training, defendant was a "seller/user" of methamphetamine.

¶ 12 b. The Trial Court's Ruling

¶ 13 The trial court granted the State's motion. The court found the other-crimes evidence was relevant to the issue of defendant's intent with respect to the charges in the present case and could be admitted provided a proper foundation was laid. The court noted this evidence could have a "propensity effect" even if it was not being offered for a propensity purpose, and accordingly, it stated it would offer a limiting instruction to the jury if the evidence was admitted.

¶ 14 C. Jury Trial

¶ 15 1. *Officer Caleb Boyer's Testimony*

¶ 16 Pekin police officer Caleb Boyer testified that on March 25, 2022, he and Officer Adrian Gonzales conducted a traffic stop on a vehicle driven by Michael Campbell and in which defendant was a passenger. Officer Boyer called for a K-9 unit to respond to the scene. The officers then searched the vehicle. In defendant's purse, the officers found a green digital scale with residue that appeared to be ice methamphetamine and a rock-like substance in a red plastic container. Defendant admitted the substance in the red container was hers. Both the digital scale and the plastic container were admitted into evidence. Counsel stipulated the substance in the container was 22 grams of methamphetamine.

¶ 17                              2. *Detective Fitzgerald's Testimony*

¶ 18        Detective Fitzgerald conducted the field tests on the drugs seized from defendant during the traffic stop. Based on his training and experience, Detective Fitzgerald believed an addict would typically use between a quarter of a gram and a half of a gram of methamphetamine per day and possession of a larger amount would indicate its owner is engaged in distribution.

¶ 19        Detective Fitzgerald then testified regarding the Facebook Messenger communications at issue in the State's motion *in limine.* Detective Fitzgerald explained, in these messages, defendant and Nunnally discussed "sells," which referred to sales of drugs, and how to avoid getting caught in a controlled buy with police. One message read, in part, "just dot your i's and cross your t's, man. It's really not that hard." In other messages, defendant and Diegel discussed obtaining two "zips," meaning two ounces of methamphetamine, for a good price, and defendant giving a "teen," meaning one-sixteenth of an ounce of methamphetamine, to Campbell in exchange for a ride. Additionally, Detective Fitzgerald testified about a phone call between defendant and her daughter while defendant was in jail pending trial in which they discussed whether Nunnally and Diegel would be subpoenaed to testify and, if so, what they should say.

¶ 20                              3. *Defendant's Testimony*

¶ 21        Defendant testified she had been an addict since 1998 and she possessed the methamphetamine at issue on March 25, 2022. Defendant claimed she had the scale that day because she would weigh methamphetamine before using it. Relatedly, defendant claimed the methamphetamine she had with her that day was for her personal use, and she had no intention of selling it. Defendant claimed the messages sent to Diegel through Facebook Messenger regarding methamphetamine transactions were actually sent by her prior boyfriend. She admitted she knew he was using her Facebook account for the procurement of methamphetamine.

¶ 22                                      4. *Verdict and Sentencing*

¶ 23          On August 8, 2023, the jury found defendant guilty of both charges. The trial court held the sentencing hearing on September 27, 2023. At the beginning of the sentencing hearing, the court stated the two charges would be merged under the "one-act, one crime" doctrine. Accordingly, defendant would be sentenced for possession of methamphetamine with intent to deliver, the more serious offense, entailing a sentencing range of 6 to 30 years. Additionally, the court noted that due to her 2011 conviction for possession of methamphetamine precursors, defendant was eligible for a sentencing enhancement of up to twice the duration of the maximum sentence otherwise authorized and a fine of up to twice the maximum amount authorized pursuant to the Methamphetamine Control and Community Protection Act (720 ILCS 646/100 (West 2022)).

¶ 24          Detective Fitzgerald testified regarding defendant's involvement in the production and distribution of methamphetamine over two decades. For her part, defendant testified she has been clean since April 2023, when she was arrested for the charges in the present case. Defendant delivered a statement in allocution, admitting to being an addict for 25 years and expressing remorse for her actions. Defendant said she would have been a "success story" if previously offered the opportunity for rehabilitation and worried that being removed from her children and grandchildren would be punishing them as well as her.

¶ 25          The State asked the trial court to sentence defendant to 12 years' imprisonment. Defendant's counsel requested the court impose the minimum sentence.

¶ 26          The trial court began its sentencing decision by noting it was considering "the presentence investigation report, the evidence presented, [defendant's] statement in allocution, arguments of counsel, all statutory and non-statutory factors in aggravation and mitigation,

whether specifically mentioned or not, [the] history and character of *** defendant," the "seriousness of the offense and *** the objective of restoring *** defendant to useful citizenship." The court considered the serious harm threatened or caused by selling methamphetamine as a factor in aggravation, as "[a]ll you have to do is live in Pekin or be in this court and you know the *** harm that methamphetamine causes." The court then noted that while defendant was not merely "somebody wandering around the streets of Pekin, selling a little bit just to pay for [her] habit," she also was not a "king pin" who was "living large off of drug sales." Nevertheless, defendant was "part and parcel" of the methamphetamine transactions in the community, particularly through permitting her car to be used for this purpose. The court stated it was considering this as an aggravating factor, "but at the same time, I am mindful to temper that and make sure that the sentence here is for the underlying offense and not this previously uncharged conduct." The court also considered defendant's prior methamphetamine-related conviction to be an aggravating factor. The court found a prison sentence would be "necessary to deter others," particularly due to "what goes on in this community and the destruction and the menace that methamphetamine is to our community."

¶ 27　　　　With regard to mitigation, the trial court noted defendant "[d]idn't contemplate harm to another" but admonished that defendant "h[ad] to know that it is harming other people to distribute and sell methamphetamine." The court rejected the proposition that the nature of defendant's criminal history would weigh in mitigation, and it also found her "[c]haracter and attitude" not to weigh in mitigation in that she demonstrated a "[l]ack of contrition" and was "not accepting responsibility." Observing that probation was not an option given the circumstances, the court sentenced defendant to 11 years' imprisonment.

¶ 28                              D. Posttrial Proceedings

¶ 29        Defendant filed a posttrial motion requesting a new trial or judgment notwithstanding the verdict. Defendant argued the trial court improperly admitted evidence of her communications through Facebook Messenger, her jail phone call was admitted as a result of her counsel questioning the reliability of the Facebook Messenger conversations, and the prejudicial impact of that call outweighed its probative value. The court denied this motion. Defendant also filed a motion to reconsider her sentence, which the court denied.

¶ 30        This appeal followed.

¶ 31                              II. ANALYSIS

¶ 32        On appeal, defendant argues (1) she was denied the right to a fair trial when the trial court allowed the State to introduce other-crimes evidence in that it served only a propensity purpose and was unduly prejudicial and (2) she was denied the right to a fair sentencing hearing when the court improperly considered the generalized harm to the community from selling and delivering methamphetamine as a factor in aggravation. Defendant acknowledges her trial counsel failed to preserve this second issue but urges its review under the plain error doctrine and contends the failure to preserve it is tantamount to ineffective assistance of counsel.

¶ 33                    A. Admission of Other-Crimes Evidence

¶ 34        Defendant argues the trial court abused its discretion by admitting the Facebook Messenger conversations between herself and others regarding methamphetamine sales as other-crimes evidence. Decisions regarding the admissibility of evidence are within the discretion of the trial court. *People v. Pikes*, 2013 IL 115171, ¶ 12. Such a decision will not be reversed absent an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003) (citing *People v. Heard*, 187 Ill. 2d 36, 58 (1999)). "The threshold for finding an abuse of discretion is high." *In re Leona W.*,

228 Ill. 2d 439, 460 (2008). That threshold will not be met unless the trial court's ruling was arbitrary, fanciful, unreasonable, or is such that no reasonable person would have taken the view adopted by the trial court. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 35   Evidence of other crimes or bad acts for which a defendant is not on trial is not admissible to establish the defendant's propensity to commit crimes. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *Pikes*, 2013 IL 115171, ¶ 11. Other-crimes evidence includes not only prior convictions, but any misconduct or criminal act that occurred either before or after the alleged criminal conduct for which the defendant is standing trial. *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 23. Though presumptively inadmissible, a trial court may admit such evidence if it is relevant for a purpose other than to prove propensity. See *Pikes*, 2013 IL 115171, ¶ 11; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Proper purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Illinois courts have routinely allowed other-crimes evidence to be admitted for the purpose of showing intent or for another non-propensity purpose in cases involving the delivery or possession (with intent to deliver) of drugs. See *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 46.

¶ 36   When other-crimes evidence is offered, the trial court must weigh its probative value against its prejudicial effect. The court may exclude the offered evidence if its prejudicial effect is determined to substantially outweigh its probative value. *Illgen*, 145 Ill. 2d at 365. In assessing whether the probative value of offered other-crimes evidence is substantially outweighed by its prejudicial effect, the court may consider its proximity in time to the charged offense, the degree of similarity to the charged offense, or other relevant facts and circumstances. 725 ILCS 5/115-7.3 (West 2022). Here, the other-crimes evidence was both recent in relation to the charged offenses and similar to the evidence of the charged offenses in terms of the amounts of

methamphetamine at issue. We note that while defendant asserts the State did not present evidence she actually engaged in the physical delivery of methamphetamine, ample circumstantial evidence of her intent to do so was admitted. This was in the form of no paraphernalia for *using* drugs being found during the traffic stop, supporting the inference she was distributing the methamphetamine and not using it. *People v. Johnson*, 334 Ill. App. 3d 666, 678 (2002) (lack of drug paraphernalia for personal use leads to the inference the defendant was intent on delivering the drugs). Moreover, the court recognized the potential propensity effect of admitting this other-crimes evidence and, accordingly, stated it would (and eventually did) issue a limiting instruction to the jury if testimony regarding this evidence was about to be elicited. Thus, the court did not abuse its discretion in admitting this other-crimes evidence.

¶ 37                                    B. Defendant's Sentence

¶ 38            Defendant argues the trial court considered improper factors in aggravation in determining her sentence. Defendant contends she was denied a fair sentencing hearing when the court considered the generalized harm to the community caused or threatened by the sale of methamphetamine as a factor in aggravation. Defendant acknowledges her trial counsel failed to preserve this issue but urges its review under the plain error doctrine and contends the failure to preserve it is tantamount to ineffective assistance of counsel.

¶ 39            "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant did not raise this issue at her sentencing hearing, nor did she raise it in any postsentencing motion. Consequently, defendant has forfeited this claim of error, and this court may review it only if she can establish plain error. The plain error

doctrine allows a reviewing court to disregard a defendant's forfeiture and consider unpreserved errors in two instances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process ***." (Internal quotation marks omitted.) *People v. McGath*, 2017 IL App (4th) 150608, ¶ 67.

"The initial step in conducting plain-error analysis is to determine whether error occurred at all. [Citation.] This requires us to conduct a substantive review of the issue." *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). "If there was no error in the first instance, there can be no plain error." *People v. Lopez*, 2012 IL App (1st) 101395, ¶ 64.

¶ 40    It is well settled that a trial court is afforded broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court is granted such deference because it is in a better position than the reviewing court to determine the appropriate sentence, as it has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Stacey*, 193 Ill. 2d at 209. When the imposed sentence falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless the sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. The sentencing judge is not required to detail for the record the process by which he or she concluded the penalty was appropriate. *People v. La Pointe*, 88 Ill. 2d 482, 493 (1981).

¶ 41    Here, the trial court carefully explained the considerations it was taking into account in determining defendant's sentence, including the factors in aggravation and mitigation. In aggravation, the court considered the significant evidence regarding defendant's history of engaging in the production, sale, and distribution of methamphetamine in the community. The harm resulting from defendant's actions transcended what is inherent in the charged offenses. The court noted how the Pekin community has been particularly damaged by crimes involving methamphetamine. A trial judge may discuss the impact a drug offense has on the community without subjecting the defendant to a double enhancement. *McGath*, 2017 IL App (4th) 150608, ¶ 73. Additionally, the court considered defendant's character and attitude, including the evidence of her lack of contrition or responsibility for her actions. The court also noted probation was not an option given the circumstances and her sentence was necessary to deter others given the harm methamphetamine has caused the community. The court considered the asserted mitigating factors but concluded they did not weigh in mitigation. Moreover, the court clarified it was not punishing defendant for her uncharged conduct when it stated, "I am mindful to temper that and make sure that the sentence here is for the underlying offense and not this previously uncharged conduct."

¶ 42    The trial court rejected the State's recommendation of 12 years' imprisonment and imposed a sentence of 11 years, which was well within the sentencing range for defendant's crimes. Under the circumstances, this court finds the trial court's decision to sentence defendant to 11 years did not constitute an abuse of discretion. As this court finds the trial court did not err in imposing this sentence, there is no plain error. *Lopez*, 2012 IL App (1st) 101395, ¶ 64. And in the absence of plain error, defendant's " 'procedural default must be honored.' " *Walker*, 232 Ill. 2d at 124 (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)).

¶ 43　　　　Defendant asserts trial counsel rendered ineffective assistance in failing to appropriately preserve the issue of the alleged impropriety in her sentence. Ordinarily, under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), "[t]o succeed on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice." *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 26. However, as this court has concluded there was no error for purposes of the plain error doctrine, we conclude trial counsel was not ineffective for failing to preserve this issue for appellate review. See *People v. McDonald*, 2021 IL App (1st) 190687, ¶¶ 41-42 ("[T]here was no clear or obvious error with counsel's representation that would trigger application of the plain error doctrine," and "[a]s a result, we do not find [the defendant's] current claims of ineffective assistance of trial and appellate counsel persuasive.").

¶ 44　　　　　　　　　　　　　　III. CONCLUSION

¶ 45　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 46　　　　Affirmed.