LeROY MARTIN, Superintendent of Police of the City of Chicago, Plaintiff-Appellee, v. HELENA THOMPSON, Defendant-Appellant (Police Board of the City of Chicago, Defendant).

First District (3rd Division)   No. 1—88—2371

Opinion filed March 7, 1990.

Cornfield & Feldman, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch, Chief Assistant Corporation Counsel, and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The defendant, Helena Thompson, was discharged from her employment as a messenger clerk with the Chicago police department for her alleged use of cocaine. The Police Board of the City of Chicago (Board) initially found the defendant not guilty of the charges brought by the superintendent. The circuit court, however, reversed the Board's decision and remanded the cause for entry of a decision consistent with the court's order so that the Board could determine an appropriate sanction. The circuit court then affirmed the Board's decision discharging the defendant, and she now appeals from both decisions of the circuit court.

The record reveals that on July 3, 1986, Thompson and a male companion were arrested for public indecency. Her male companion was also charged with possession of cocaine. As a result of the circumstances surrounding her arrest, the department requested Thompson to submit to a drug test. On March 8, 1987, nine months after producing a urine specimen, Thompson was suspended from her employment. On March 18, then Superintendent Fred Rice filed charges with the Police Board alleging violations of: Rule 1 (Violation of any law or ordinance); Rule 2 (Any action or conduct which impedes the

department's efforts to achieve its policy and goals or brings discredit upon the department); and Rule 6 (Disobedience of an order or directive whether written or oral). A hearing was conducted before the Police Board on October 30, 1987. The crux of the department's case was test results revealing the presence of cocaine in the urine specimen. Because the bottle containing Thompson's urine was not introduced into evidence, as the laboratory lost the bottle, the test results were admitted into evidence with little weight attributed to them by the hearing officer. Consequently, the hearing officer found Thompson not guilty. In this appeal, the court must decide whether the Police Board's initial decision finding Thompson not guilty was, as the circuit court held, against the manifest weight of the evidence.

The transcript of Thompson's hearing reveals the following. On the early morning of July 3, 1986, police officers Alex Kaider and Sidney Davis were on patrol when the officers observed a white Dodge van parked outside a factory and proceeded to investigate. Officer Kaider walked up to the rear of the van and upon hearing voices, shined his flashlight through a rear window. Officer Kaider discovered two naked individuals and announced his presence. Kaider then observed the female occupant rub her finger over a table surface and lick her finger, repeating the act several times. Kaider could not see what the female occupant had rubbed her finger in, and he was unable to detect anything during a physical inspection of the table. A search of the van, however, produced a shortened McDonald's straw containing a white powdery residue and six miniature white envelopes containing a white powder which Kaider suspected as being cocaine. The male occupant, identified as Gerald Jones, was arrested for possession of cocaine and public indecency. The female occupant, identified as the defendant, Helena Thompson, was arrested for public indecency. The charge against Thompson for public indecency was later dismissed and is not related to the charges brought by the superintendent.

Around 10:30 in the morning of the same day, Officers Morton and Wallace from the Internal Affairs Division went to Thompson's residence and escorted her to the medical section. Thompson produced a urine specimen in the presence of Officer Morton. Thompson then witnessed Officer Mitkal pour a portion of the specimen into a bottle, cap the bottle, and seal it with red evidence tape. Officer Mitkal placed identification number DA 86 6672 on both the bottle and the cap. The bottle was then placed in a refrigerator, and Thompson signed an affidavit attesting to what she observed. The parties stipulated that Sergeant Don Laffey removed the specimen from the

refrigerator and delivered it to the American Institute for Drug Detection (AIDD) on July 7, 1986.

Thompson's specimen was personally received by Don Shattuck, president of AIDD. A "Test Requisition" form was prepared, and the police department entered its own identification number, DA 86 6672, on the form. Mr. Shattuck testified that AIDD also assigns its own identification number to each sample and that Thompson's specimen was assigned DD—42004. Mr. Shattuck then described the basic procedure for labeling specimens. Shattuck stated that the AIDD number is first recorded on the requisition form and then entered into AIDD's computer. A duplicate of the AIDD number is then affixed to the bottle. There was no testimony, however, as to who actually recorded the AIDD number on the requisition form in this instance and who, if anyone, labeled Thompson's bottle with the AIDD number. Mr. Shattuck stated that after signing the requisition form for the bottle, he personally transferred Thompson's specimen to James Walsh, a toxicologist, who is charged with the responsibility of performing the initial screening for drug detection by a process known as the Enzyme Multiplier Immunoassay Technique (EMIT).

Mr. Walsh described the procedures employed in running an EMIT test for a given sample. Walsh then testified that he broke the seal on the urine specimen. It also appears from Walsh's testimony that the requisition form travels with the bottle during testing, as he stated that had the seal been tampered with, he would have recorded that fact on the "request sheet." Then, testifying from department's exhibit No. 3, a copy of the EMIT tape for specimen No. DD 42004, Walsh stated that the EMIT test performed on Thompson's specimen produced a positive result for cocaine and THC. Walsh stated that he tested specimen No. DD 42004 as he identified his handwriting on the tape.

On July 8, Joyce Mah removed Thompson's bottle from a refrigerator and performed a second test, known as Gas Chromatography Mass Spectrometry (GCMS). Mah testified that she did not see who placed the specimen in the refrigerator, but that Mr. Walsh must have done so because the individual performing a test upon a specimen is responsible for its storage after testing. She stated that specimen No. DD 42004 was tested by her because her initials appeared on the department's exhibits pertaining to the GCMS test. Mah testified that she ran an Autotune, which is a test performed on a known compound to assess the operating condition of the machine. She also ran a "standard run," a test performed on a drug-free urine spiked with a specific amount of cocaine, and a "blank run," which is a test per-

formed on a drug-free urine. Mah further testified that the GCMS test performed on specimen No. DD 42004 confirmed the presence of cocaine in Thompson's urine specimen. Finally, Mah stated that after a confirmation test is completed on any given sample, the bottle is then placed into a locked freezer for long-term storage.

Dr. Jan Johnson, a senior supervisor and toxicologist with AIDD, rendered his opinion based on the department's exhibits that the tests run for specimen No. DD 42004 were run properly. He also testified that the exhibits show that the lab equipment had been calibrated and was operating correctly. On cross-examination, however, Johnson admitted that he could not determine from the department's exhibits whether specimen No. DD 42004 was the same sample produced by Thompson which the police department marked as DA 86 6672. It was his opinion that both cocaine and the cocaine metabolite, benzoylecognine, were present in specimen DD 42004.

Thompson denied rubbing her finger across a table and licking her finger. Thompson further denied using cocaine on July 3 and denied ever using cocaine during the course of her employment.

At the conclusion of the testimony, the department moved that its exhibits showing the test results be admitted into evidence. Thompson objected on the ground that the superintendent failed to produce Thompson's urine specimen at the hearing. The transcript reveals that Mr. Shattuck arrived at the hearing without the bottle and that a search at AIDD had been conducted during the course of the hearing. The department requested a continuance so that AIDD could search for the bottle and argued that the exhibits should be admitted notwithstanding the bottle's absence because the testimony established an adequate chain of custody. The hearing officer denied the motion for a continuance, but admitted the department's exhibits into evidence for "what they were worth." On December 16, Thompson was adjudged not guilty on all charges. The Board indicated in its "Findings and Decision" that there was "no evidence" establishing that Thompson ingested cocaine.

The superintendent filed a complaint for administrative review in the circuit court on January 20, 1988. On April 18, the circuit court reversed and remanded the cause for a determination by the Board of an appropriate sanction. Thompson filed a motion requesting the circuit court to modify its judgment and to remand to the Board for a clarification of its findings and decision, contending that the Board's decision was too incomplete to provide a basis for administrative review. On May 23, while the motion for modification was pending, the Board acted on the circuit court's order and ordered her discharged

from her employment. Thompson filed an emergency motion seeking nullification of the Board's second decision. The circuit court denied the emergency motion, and on June 16, the circuit court denied Thompson's motion for modification. Thompson filed a motion for review of the Board's May 23 decision, and a hearing was set for June 30. Thompson subsequently filed her own complaint for administrative review in order to preserve her right of review of the Board's May 23 decision. By agreed order, Thompson's complaint for administrative review was consolidated with the superintendent's original complaint, and on July 26 the circuit court affirmed its previous decision reversing the Board's finding of not guilty and the Board's second decision discharging Thompson.

On appeal, the defendant-appellant contends that the circuit court erred in holding that the Board's decision was against the manifest weight of the evidence because the superintendent failed to satisfy his burden of proof. Thompson maintains that at the very least, the superintendent had to prove by a preponderance of the evidence that she ingested cocaine and suggests that a "clear and convincing" standard may even be applicable, as the superintendent alleged criminal conduct. The record does not disclose what standard the hearing officer employed, but it is apparent that the circuit court applied the "clear and convincing" standard in holding that the Board's decision was against the manifest weight of the evidence. Thompson does not challenge the accuracy of the test results, only the conclusion that the test results were in fact related to her specimen. The plaintiff also contends that on remand, the Board imposed too harsh a penalty.

■■ ■ As the complainant in the hearing, the superintendent bore the burden of proving his allegations against Thompson. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 53, 416 N.E.2d 1082.) In determining what standard of proof should apply in an administrative proceeding, the court must balance the private interests affected by the proceeding, the countervailing governmental interests, and the risk of error created by the State's chosen procedure. (*Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 190-91, 497 N.E.2d 984.) In a dismissal proceeding against a police officer, the preponderance of the evidence standard applies even if criminal conduct is involved. (*Schlobohm v. Rice* (1987), 157 Ill. App. 3d 90, 96, 510 N.E.2d 43 (cocaine use); *Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 1019, 507 N.E.2d 1262 (gambling).) We consider that the same standard applies to a messenger clerk employed by the police department. See *Board of Education v. State Board of Education*, 113 Ill. 2d at 191-94.

■ Upon judicial review of an administrative decision, a reviewing court is limited to determining whether the decision is against the manifest weight of the evidence. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1094, 494 N.E.2d 171.) Evaluating the credibility of the witnesses and resolving conflicting evidence is within the province of the administrative body (*Schlobohm*, 157 Ill. App. 3d at 93), and its findings are deemed *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) A reviewing court is not permitted to reweigh the evidence or reassess the credibility of the witnesses. (*Mead*, 143 Ill. App. 3d at 1095.) That an opposite result is reasonable or that a court might have reached a different conclusion is insufficient grounds for disturbing an administrative determination. (*Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 287, 509 N.E.2d 467.) To reverse a decision of an administrative body, a reviewing court must "conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident." *Sheehan*, 158 Ill. App. 3d at 287.

■ We agree with the circuit court that the Police Board's decision finding Thompson not guilty was against the manifest weight of the evidence. There is no dispute that the police department followed proper procedures in the labeling and processing of Thompson's specimen up until the time the specimen was delivered to AIDD. Nor does Thompson challenge the accuracy of the test results. She only disputes whether the test results admitted into evidence are in fact related to her specimen. While AIDD could improve its procedures, we do not believe that the evidence was insufficient. Mr. Shattuck testified that he received Thompson's bottle and that he personally transferred possession to Walsh. Shattuck stated that he is required to take special interest in specimens delivered by the police department. The test requisition form, which contains both identification numbers DA 86 6672 and DD 42004, matches Thompson's specimen with the test results.

■ In the absence of any evidence of tampering with the contents of the specimen tested, a sufficient foundation was established for the admission of the test results. (*People v. Anthony* (1963), 28 Ill. 2d 65, 69, 190 N.E.2d 837, 839; *People v. Norman* (1962), 24 Ill. 2d 403, 407, 182 N.E.2d 188, 190, *cert. denied* (1962), 371 U.S. 849, 9 L. Ed. 2d 85, 83 S. Ct. 86; *Ritenour v. Police Board* (1977), 53 Ill. App. 3d 877, 369 N.E.2d 135.) Although the bottle's location could not be discovered after it had supposedly been placed in a locked freezer for

long-term storage, the mishandling of Thompson's bottle occurred after her specimen had been tested by Walsh and Mah, and the results of their tests were recorded and identified with the AIDD number assigned to Thompson's specimen. Accordingly, we find that the superintendent proved Thompson guilty by a preponderance of the evidence, and the circuit court justifiably reversed the Board's initial decision.

We further affirm the Board's action discharging Thompson from her employment. An administrative tribunal's determination that discharge is the appropriate sanction cannot be overturned unless such discharge is arbitrary and unreasonable or unrelated to the requirements of service. (*Allman v. Police Board* (1986), 140 Ill. App. 3d 1038, 1041, 489 N.E.2d 929.) "Cause" for discharge has been defined as a substantial shortcoming which renders the employee's continuance in office to be detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as a good cause for discharge. (*Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 410, 438 N.E.2d 147.) Cocaine use is a sufficient basis for discharge. (*Schlobohm*, 157 Ill. App. 3d 90.) Because the police department cannot condone the illegal use of drugs by its employees, the ultimate sanction of discharge is neither arbitrary nor unreasonable.

The judgment of the circuit court is affirmed.

RIZZI and WHITE, JJ., concur.