# Illinois Official Reports

## Appellate Court

---

### *People v. Thompson*, 2017 IL App (3d) 160503

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEREMY R. THOMPSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0503 |
| Filed | September 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 15-CF-414; the Hon. H. Chris Ryan, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Eric L. Miskell, of Miskell Law Center, of Ottawa, for appellant.<br><br>Karen K. Donnelly, State's Attorney, of Ottawa (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1       Defendant, Jeremy R. Thompson, challenges his convictions, arguing that the circuit court erred in allowing an officer to testify as to ballistics results without sufficient foundation. We reverse and remand for a new trial.

¶ 2                              FACTS

¶ 3       Defendant was charged with (1) possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2014)); (2) aggravated assault (720 ILCS 5/12-2(c)(5) (West 2014)), in that he "knowingly shined a laser gun sight that was attached to a firearm, so that the laser beam struck the immediate vicinity of Deputy Aaron Hollenbeck"; and (3) aggravated assault (720 ILCS 5/12-2(c)(6)(i) (West 2014)), in that he pointed a firearm at Hollenbeck, knowing Hollenbeck was a peace officer, placing Hollenbeck in reasonable apprehension of receiving a battery.

¶ 4       A jury trial was held at which the evidence established that just after 10 p.m. on September 13, 2015, Hollenbeck and Deputy Matt Moore were dispatched to an apartment building based on a theft complaint. They were advised by dispatch that there was a warrant out for one of the tenants of the apartment building. They arrested the tenant. As they were walking to the squad car, Hollenbeck and Moore noticed a green light bouncing off the building and hitting the squad car. They looked up to see where the light was coming from and saw defendant holding a rifle about 40 to 50 feet away on the other side of a fence. A woman was tugging on defendant's arm, causing the laser from the rifle's scope to move around. Hollenbeck yelled at everyone outside of the apartment building to get down. He then yelled multiple times at the man to drop the gun. Hollenbeck thought he was going to get shot. The man and woman both took off running in the opposite direction. Hollenbeck and Moore ran after defendant and the woman with their guns drawn. They then saw defendant and the woman come back into view without the gun. Hollenbeck told them to freeze and put up their hands. He then patted down defendant. He did not find any weapons on him. Hollenbeck asked defendant where he placed the rifle, and defendant responded, "I stuck it up my ass, why don't you try looking there." Defendant was placed in handcuffs. Hollenbeck searched the area and found the rifle underneath a camper trailer about 40 feet away. The gun turned out to be a .22-caliber pneumatic rifle that was not loaded.

¶ 5       The State called Detective Sergeant Adam Diss to testify regarding the muzzle velocity of the pneumatic rifle in order to establish that it was considered a firearm. See 720 ILCS 5/2-7.1 (West 2014); 430 ILCS 65/1.1 (West 2014). Proving this essential element of all three of the charged offenses required a showing that the velocity of a projectile from the muzzle of the air rifle was 700 feet per second or greater. Diss testified that he worked in the investigations unit of the La Salle County sheriff's office and was a master firearms instructor with the University of Illinois Police Training Institute in Champaign and a part-time gunsmith. In his personal time, Diss collects and repairs firearms and reloads his own cartridges and chronograph cartridges. He discussed his experience using a chronograph to test a firearm's muzzle velocity. He said a chronograph is "an electronic device that you fire over the top of it and it measures the speed of the round, the velocity of the round." He had been using a chronograph "in [his] personal time" for 20 years. The State asked Diss, "In the firearms industry, what is the industry standard method in measuring of muzzle velocity?" Diss stated, "The industry uses chronographs to check the rounds." Diss stated he had owned a chronograph for

approximately 10 years and used his friends' chronographs prior to that. He had used a chronograph "[s]everal dozens" of times through his experience with firearms. To gauge the accuracy of the chronograph, Diss said he "fired [his] chronograph with friends' chronographs and found it to be consistent with theirs, and [he] fired factory loaded ammunition over it and found it to be consistent with factory loads." He checked his chronograph in this manner within six months of performing the tests for this case. He never found it to be inaccurate.

¶ 6 Defense counsel objected to the foundation for Diss's testimony regarding the tests Diss performed with the chronograph. Outside the presence of the jury, the State and defense counsel questioned Diss regarding his education and training in firearms and the use of the chronograph. Diss stated that he did not have any formal degrees, formal training in forensic science, or any formal training "with regard to ballistic measuring of speed of firearms." When asked when he last calibrated his chronograph, Diss stated, "You don't calibrate personal chronographs." He did not consult any documentation to ascertain whether his chronograph was properly calibrated. He knew there were standards for calibrating chronographs, but he did not know what they were. Diss was unaware of national standards for using a chronograph to test the speed of bullets. He was further unaware of the National Institute of Standards in Technology. Diss again stated that he checked his chronograph against his friends' chronographs, but he said he did not know when or if their chronographs were calibrated.

¶ 7 Diss stated that when he used his chronograph in this case, the gun was not fixed, but he remained in the same position. He did not know the wind speed, the humidity, or where the wind was coming from during the time he tested the firearm. He did not know the standard for recording wind resistance as he "didn't think it was an issue." Diss stated he did not base his examination on any generally accepted scientific methodology, but only on his knowledge of his chronograph. When using the chronograph, Diss placed it 10 feet away from the firearm and fired 10 shots. He said he uses the same methodology each time based on his experience. He always fired the slowest possible pellets. Diss said he was unaware of any other methodology that would be relevant to its accuracy. Diss said he did not call the Illinois State Police for guidance as to the methodology to conduct a ballistics test or send the gun for velocity testing at the Illinois State Police crime lab because "[t]hey do not offer velocity testing because they say they cannot calibrate a chronograph." He further did not consult the National Rifle Association or any other industry standard organization for the methodology. He based his method solely on his experience, uninformed by technical standards.

¶ 8 The court allowed Diss's testimony, stating, "I'll let him give his opinion on it. Whether or not you're going to get past a directed verdict is a whole other question." The jury was brought back in, and Diss testified that he fired 10 rounds of the .22-caliber air rifle over the chronograph, using the "slowest possible pellets." The velocity of the 10 rounds ranged from 714 to 741 feet per second, which was sufficient to designate the pneumatic rifle as a firearm. See 720 ILCS 5/2-7.1 (West 2014); 430 ILCS 65/1.1 (West 2014). Diss agreed that if his chronograph were even 5% inaccurate, the velocity of 8 of the 10 rounds would be less than 700 feet per second. If the velocity of the pneumatic rifle was less than 700 feet per second, it would not qualify as a firearm under the statute, and therefore, defendant could not be convicted of the three offenses. See 720 ILCS 5/2-7.1 (West 2014); 430 ILCS 65/1.1 (West 2014). Diss did not know how accurate his chronograph was. Diss further testified to his experience, methodology, and use of the chronograph as he had previously.

¶ 9    After Diss's testimony, the State admitted into evidence a certified copy of defendant's conviction for criminal trespass to property, a Class 4 felony. The jury found defendant guilty of all three counts. Defendant was sentenced to a two-year term of imprisonment in the Illinois Department of Corrections.

¶ 10                                    ANALYSIS

¶ 11    On appeal, defendant argues that the circuit court erred in allowing Diss to testify as to the chronograph results without sufficient foundation. Because Diss did not establish the accuracy of the ballistic testing, we find that the foundation was insufficient for Diss's testimony regarding the ballistics results.

¶ 12    At the outset, we note that the State argues that defendant has waived the above argument as he failed to cite authority. The State acknowledges that defendant cited Illinois Rule of Evidence 702 (eff. Jan. 1, 2011) and a case included in the comment to the rule, but notes that defendant does not explain how the rules apply in this case. We agree with the State's assessment of defendant's argument; however, we note that waiver is a limitation on the parties, not the court. *People v. Collins*, 301 Ill. App. 3d 529, 531 (1998) (citing *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300 (1995)). Here we believe the interest of justice requires that we consider the merits of defendant's appeal.

¶ 13    "[W]hen expert testimony is based upon an electronic or mechanical device *** the expert must offer some foundation proof as to the method of recording the information and proof that the device was functioning properly at the time it was used." *People v. Bynum*, 257 Ill. App. 3d 502, 514 (1994). Such proof is necessary to ensure that the admission of expert scientific testimony based upon a testing device is both relevant and reliable. *Id.* The expert must show that the electronic or mechanical device was in good working order when it was used by explaining how the machine is maintained and calibrated and why the expert knows the results are accurate. Compare *People v. Raney*, 324 Ill. App. 3d 703, 708-10 (2001) (expert failed to testify that gas chromatography mass spectrometer (GCMS) was working properly, that any testing was done to assess the condition of the machine, or that the accuracy of the machine was tested), *Bynum*, 257 Ill. App. 3d at 514 (expert failed to testify that GCMS machine was calibrated and that the results were accurate), and *People v. Smith*, 2015 IL App (1st) 122306, ¶ 43 (expert did not testify that breathalyzer performed accurately or was certified as accurate), with *People v. Berrier*, 362 Ill. App. 3d 1153, 1160-61 (2006) (expert testified that GCMS was calibrated before testing and was functioning properly), *People v. DeLuna*, 334 Ill. App. 3d 1, 21 (2002) (expert testified that GCMS was calibrated daily), and *Washington v. Police Board of the City of Chicago*, 257 Ill. App. 3d 936, 939 (1994) (expert testified how GCMS machines were calibrated).

¶ 14    If an expert (1) fails to testify that the machine used was working properly, (2) does not indicate whether any testing was done to assess the operating condition of the machine, or (3) fails to explain how the machine was calibrated, a proper foundation for the admission of the results obtained from the machine is not established. *Raney*, 324 Ill. App. 3d at 708-10. Where the required foundation is not established, the expert testimony is inadmissible. *Id.* at 710.

¶ 15    Here, Diss testified that he had been using a chronograph personally for 20 years. He stated that the chronograph was the industry standard for testing the velocity of ballistics. He had no formal training in measuring ballistic speed. To check the accuracy of his chronograph, he tested it against his friends' chronographs and checked it against factory ammunition, which he

- 4 -

had done within six months of testing the pneumatic rifle in this case. Diss also testified that (1) though he knew chronographs could be calibrated, "[y]ou don't calibrate personal chronographs,"; (2) he did not know when or if his friends' chronographs were calibrated; (3) he did not know the standards for chronographs; (4) he did not call the Illinois State Police for guidance on using the chronograph because they do not offer velocity testing; (5) he did not send the gun to the Illinois State Police crime lab for testing because they could not calibrate a chronograph; and (6) he did not consult anything to determine if his chronograph was calibrated. Therefore, Diss failed to establish with any reliability that the chronograph was working properly and that the results were accurate.

¶ 16    Further, Diss's use of the chronograph to test the pneumatic rifle was solely based on his experience and not on any generally-accepted methodology. He did not place the gun in a fixed position. He did not know the wind speed, wind direction, or the level of humidity on the day he shot the gun, nor did he know the standards for recording wind resistance. Because the expert failed to demonstrate the accuracy of the chronograph and its test results, the State did not "establish the necessary foundation proof for admitting the expert opinion" (*id.*)*,* and the court abused its discretion in admitting Diss's testimony regarding the ballistics results. See *People v. Williams*, 238 Ill. 2d 125, 136 (2010) (applying an abuse of discretion standard for a foundational challenge to the admission of expert testimony).

¶ 17    Having determined that the court erred in admitting Diss's expert testimony regarding the ballistics results, we must now determine the appropriate remedy. See *Smith*, 2015 IL App (1st) 122306, ¶ 45. "The prospect of retrial raises double jeopardy concerns and requires us to assess the sufficiency of the evidence against defendant." *Id.* ¶ 46. "Although the double jeopardy clause precludes the State from retrying a defendant after a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict, the double jeopardy clause does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction." *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Stated another way, if the evidence was insufficient to convict defendant, then we must reverse his conviction outright. However, " '[i]f the evidence presented at the first trial, *including the improperly admitted evidence*, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy.' " (Emphasis in original.) *Smith*, 2015 IL App (1st) 122306, ¶ 46 (quoting *People v. McKown*, 236 Ill. 2d 278, 311 (2010)).

¶ 18    In order to be convicted of possession of a firearm by a felon, the State had to prove that defendant (1) had been convicted of a felony and (2) knowingly possessed a firearm "about his person or on his land or in his own abode or fixed place of business." 720 ILCS 5/24-1.1(a) (West 2014). A certified copy of defendant's felony conviction was entered into evidence. Thus, the first element was proven. Under the Criminal Code of 2012, a firearm has the same meaning as ascribed it under the Firearm Owners Identification Card Act (FOID Card Act). 720 ILCS 5/2-7.1 (West 2014). Under the FOID Card Act, the term firearm includes a pneumatic gun, as long as the pneumatic gun does not have "a maximum muzzle velocity of less than 700 feet per second." 430 ILCS 65/1.1 (West 2014). Stated another way, in order to prove defendant was in possession of a firearm, the State had to prove that the pneumatic rifle had a muzzle velocity of 700 feet per second or more. As stated above, when determining whether the State met this burden, we consider the improperly admitted evidence. *Smith*, 2015

IL App (1st) 122306, ¶ 47. The results of Diss's chronograph testing showed that the pneumatic rifle had a velocity of over 700 feet per second.

¶ 19 To convict the defendant of the first count of aggravated assault, the State had to prove that he committed an assault and "[k]nowingly and without lawful justification shine[d] or flashe[d] a laser gun sight or other laser device attached to a firearm, or used in concert with a firearm, so that the laser beam [struck] near or in the immediate vicinity of any person." 720 ILCS 5/12-2(c)(5) (West 2014). A person commits an assault when "he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a) (West 2014). For the second count of aggravated assault, the State had to prove that defendant committed an assault by "[using] a firearm, other than by discharging the firearm" against a peace officer "performing his or her official duties." 720 ILCS 5/12-2(c)(6)(i) (West 2014). Here, the evidence showed that defendant shined the laser from the gun in the direction of the officers that were on duty at the time. Hollenbeck testified that he was afraid he was going to get shot. Further, as stated above, the State proved, with the improperly admitted evidence, that the pneumatic gun was a firearm for purposes of the statute. Viewed in the light most favorable to the State, the evidence at trial was sufficient for a rational trier of fact to find defendant guilty of possession of a firearm by a felon and both counts of aggravated assault. Therefore, there is no double jeopardy impediment to retrial, and we remand for a new trial.[1]

¶ 20 CONCLUSION

¶ 21 The judgment of the circuit court of La Salle County is reversed and remanded.

¶ 22 Reversed and remanded.

---

[1]In light of our above holding, we offer no opinion on defendant's alternative issues on appeal.