# Illinois Official Reports

## Appellate Court

---

### *People v. Clayborne*, 2020 IL App (3d) 170518

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OSCAR L. CLAYBORNE, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0518 |
| Filed | March 23, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 16-CF-476; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and McDade concurred in the judgment and opinion. |

¶ 1    Defendant, Oscar L. Clayborne, appeals his conviction for unlawful possession of a controlled substance with intent to deliver. Defendant argues that the Tazewell County circuit court erred in admitting expert testimony regarding testing performed on the substance on the basis that the State failed to provide an adequate foundation for this testimony. We affirm.

¶ 2    I. BACKGROUND

¶ 3    Defendant was charged with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2016)) in that he knowingly possessed with the intent to deliver more than 15 grams but less than 100 grams of a substance containing cocaine.

¶ 4    A jury trial was held. Therese Risen testified that she and her sister, Barb Eckhart, were traveling in a vehicle on Interstate 474 on the date of the incident. The right lane of traffic was blocked off due to construction, the left lane was open, and there was an open shoulder on the left side of the road. Risen was driving in the left lane. A black Mercedes passed her on the left shoulder. Risen saw the driver of the black Mercedes throw clear plastic bags containing a white substance from the vehicle into the construction area. A squad car passed Risen's vehicle from the left shoulder. The squad car pulled in front of Risen's vehicle and behind the black Mercedes. The squad car activated its lights, and the black Mercedes pulled over on the side of the road. Risen and Eckhart called the police and told them what they had seen. They talked to the police several times. The police said they were unable to find the bags containing the white substance. Risen told them that they were looking in the wrong place.

¶ 5    Eckhart also testified about what she had seen on the day of the incident. Eckhart's testimony was largely consistent with Risen's.

¶ 6    Police officer Jeffrey Miller testified that he was on patrol on the day of the incident. Miller was parked on a median on a four-lane highway. There was road construction in the area that he was patrolling such that only one lane was open on each side of the highway. Miller encountered defendant on the date of the incident. Miller saw that defendant was driving a vehicle that Miller had stopped a month earlier. Miller knew from a previous encounter that defendant did not have a driver's license. Miller also confirmed on his laptop that defendant's driver's license was revoked. Miller pulled out from the median to catch up to defendant's vehicle. Miller observed defendant pull onto the left shoulder of the road and pass a vehicle. Miller later learned that Risen and Eckhart were in the vehicle that defendant passed.

¶ 7    Miller initiated a traffic stop on defendant's vehicle. Miller arrested defendant for driving on a revoked license and for an outstanding warrant. Miller searched defendant's person incident to the arrest and found $7402 in cash in the front pocket of defendant's shorts. Miller placed defendant in a squad car, and he conducted an inventory search of defendant's vehicle. Miller retrieved four cell phones from the vehicle while conducting the inventory search. Miller then transported defendant to the police station.

¶ 8    Miller learned that Eckhart and Risen had contacted the police department regarding objects being thrown from the window of defendant's vehicle. While Miller was conducting the traffic stop, another officer attempted to find those items. Miller did not personally observe defendant throw anything from his vehicle. Miller interviewed defendant at the police station, and defendant denied throwing anything from his vehicle.

¶ 9 Police Chief Dale King testified that he responded after Miller effectuated a traffic stop on defendant. King received a call from dispatch saying that two citizens witnessed someone throw something from the vehicle. King spoke with one of the individuals who observed this. King attempted to locate these items on the right shoulder of the road, but he was unable to find them. Later, King reviewed a video recording of the traffic stop and spoke to the witness again. King could not see defendant throw anything from his vehicle on the video, but the video gave him a better idea of where to look for the thrown items.

¶ 10 King returned to search for the items. Thirty to forty minutes had passed since the traffic stop occurred. Approximately 50 yards from where King stopped searching the first time, he found three clear plastic bags containing a white powdery substance. King identified People's exhibit Nos. 3 and 4 as the white powdery substance that was contained in the plastic bags.

¶ 11 King testified that it was common for drug dealers to carry large amounts of cash, because selling drugs was a cash-only business. King testified that it was also common for drug dealers to have multiple cell phones. They would use different phones to contact their sources and their customers. King stated that the amount of the substance that he found—over 25.7 grams—was not a "user weight." King stated that a user would likely have, at most, 10 grams. King also said that the way it was packaged indicated that it was intended for delivery. Specifically, it was packaged in amounts of 2 to 3.5 grams per package.

¶ 12 Joni Little testified that she was a forensic scientist with the Illinois State Police. Little conducted tests on two bags of off-white powder that were collected as evidence in this case. The powder in the first bag weighed 25.7 grams, which was originally packaged in 16 knotted plastic bags. This was marked as People's exhibit No. 3. The second bag contained 1.7 grams of off-white powder and was marked as People's exhibit No. 4. Little testified that she conducted two "standard scientific tests" on the powder contained in People's exhibit No. 3: the chemical color test and the gas chromatography mass spectrometry (GCMS) test. The chemical color test was a preliminary test, and the GCMS test was a confirmatory test. The chemical color test showed that the substances tested positive for the presence of cocaine.

¶ 13 Little explained that she performed the GCMS test by dissolving a portion of the powder contained in People's exhibit No. 3 in a liquid and introducing it into an instrument. The instrument gave her a readout that she compared to known drug standards that had been run on the instrument. The result of the GCMS test was that the substance was positive for the presence of cocaine. The prosecutor asked Little: "And based on your training, education, experience on these testings are you able to state or can you give an opinion within a reasonable degree of scientific certainty as to what's contained in Exhibit No. 3?" Defendant objected on the basis of foundation, and the court overruled the objection. Little responded: "Yes. The 25.7 grams of off-white powder does indeed contain cocaine."

¶ 14 Little testified that she conducted the same two tests on the powder contained in People's exhibit No. 4, and it tested positive for cocaine. Defense counsel again objected as to foundation. The prosecutor and defense counsel had a discussion with the court off the record. The following exchange then occurred between the prosecutor and Little:

"Q. *** Before performing these tests, did you—were you using machines that are at the Illinois State Police Division of Forensic Services?

A. Yes, that's correct.

Q. And are these machines regularly tested and checked for accuracy?

A. They are.

Q. And at the time that you performed these tests, had they been checked for accuracy?

A. Yes. They had function checks.

Q. And were they in proper working order?

A. Yes, they were."

Little opined that, within a reasonable degree of scientific certainty, both the 25.7 grams of powder in People's exhibit No. 3 and the 1.7 grams of powder in People's exhibit No. 4 contained cocaine.

¶ 15 On cross-examination, defense counsel asked Little how the GCMS machines were checked for accuracy. Little stated that members of her drug chemistry section at the laboratory performed monthly function checks. Sometimes Little performed the function checks. There were five GCMS machines at the laboratory, and Little could not independently recall which machine she used. Little stated that she tested the substance on or about January 6, 2017. She did not know when the machines had been last checked for accuracy, but she said the logbooks at the laboratory would have that information. Little said that if there had been an indication that a machine was not functioning, it would have been taken down for maintenance. Little stated that "a number of factors" could indicate that a machine was not functioning properly, including if a preliminary test is positive but the confirmatory test is not. Little acknowledged that the preliminary tests were not always accurate. The following exchange occurred between defense counsel and Little:

"Q. When you're testing these machines for accuracy, how do you test them?

A. We have function checks called Autotunes that we do.

Q. What is a function check?

A. It's basically checking the function of the instrument."

Little stated that she had no reason to believe that she ran the GCMS tests on a machine that was not functioning properly.

¶ 16 Outside the presence of the jury, defense counsel moved to strike all of Little's testimony and conclusions regarding the GCMS tests on the basis that there was an inadequate foundation for her testimony and opinions pursuant to the holding in *People v. Raney*, 324 Ill. App. 3d 703 (2001). Defense counsel argued that an adequate foundation for Little's testimony needed to show that the facts and data were relied on by experts and the machine was properly maintained and calibrated.

¶ 17 The court took the motion under advisement. The court said it would give the prosecutor the opportunity to recall Little as a witness and lay more foundation if necessary.

¶ 18 The prosecutor recalled Little. Little stated that she had contacted the crime laboratory to obtain further information regarding the machine she used to perform the GCMS tests. Little stated that the machine she used had been checked on December 9, 2016, and January 10, 2017. Both checks indicated that "everything was fine" with the machines. Little stated that she conducted her analysis on January 9. Little stated that the information that she had just testified to was provided by a coworker whom she had called during the break.

¶ 19 Later in the trial, defense counsel argued that Little's testimony regarding the logbook was essentially hearsay testimony. The State argued that the business records exception applied,

such that Little's testimony was not hearsay. The State argued that it had laid an adequate foundation under *Raney*. The court noted that defense counsel failed to object on the basis of hearsay when Little was testifying about the logbook. The court took the matter under advisement.

¶ 20    The court denied defendant's motion to strike Little's testimony. The court reasoned:

"I think the witness after she retook the stand, I mean, arguably in her original session on the stand, she satisfied what I think is necessary under the case law, but I think she did satisfy it clearly the second time she took the stand. So I'm going to respectfully deny the motion to strike."

¶ 21    The jury found defendant guilty, and the court sentenced him to eight years' imprisonment.

¶ 22                                II. ANALYSIS

¶ 23    At the outset, we reject defendant's characterization of his argument as a challenge to the sufficiency of the evidence such that the appropriate remedy is outright reversal. Specifically, defendant argues that Little's testimony was improperly admitted and that the remaining evidence was insufficient to convict him. We find, however, that defendant's argument is substantively a challenge to the admission of Little's testimony. Where evidence is improperly admitted, the proper remedy is retrial rather than outright reversal, as long as the properly and improperly admitted evidence taken together were sufficient to convict. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). This is true even if the properly admitted evidence alone would be insufficient to convict. *Id.* Also, when presented with a true challenge to the sufficiency of the evidence, a reviewing court may consider improperly admitted evidence along with the other trial evidence. *People v. Furby*, 138 Ill. 2d 434, 453-54 (1990); *People v. Peterson*, 2015 IL App (3d) 130157, ¶ 188. We acknowledge that, in *Raney*, the court considered an argument similar to defendant's argument as a challenge to the sufficiency of the evidence. See *Raney*, 324 Ill. App. 3d at 705-06. However, to the extent that *Raney* conflicted with the foregoing authority, we believe it was wrongly decided. Accordingly, we consider defendant's argument as a challenge to the admission of Little's testimony rather than a challenge to the sufficiency of the evidence.

¶ 24    Defendant argues that the circuit court erred in admitting Little's testimony that the substance at issue contained cocaine because the State failed to lay a proper foundation for the admission of the GCMS test results. Specifically, defendant contends that Little did not testify that the facts she relied upon were of a type reasonably relied on by experts in her field, she failed to explain how the machine on which she conducted her tests was maintained, and she failed to explain why she knew her results were accurate. We find that the court did not err in admitting Little's testimony.

¶ 25    The parties disagree as to the appropriate standard of review. Citing *People v. Safford*, 392 Ill. App. 3d 212, 221 (2009), defendant argues that the issue should be reviewed *de novo*. The *Safford* court held that the question of whether the foundational requirements for expert testimony have been met is a question of law subject to *de novo* review. *Id.* at 221-22. The State argues that the issue should be reviewed for an abuse of discretion. A circuit court abuses its discretion when its ruling is "fanciful, unreasonable or when no reasonable person would adopt the trial court's view." *People v. Taylor*, 2011 IL 110067, ¶ 27.

¶ 26 We believe that the correct standard of review is whether the circuit court abused its discretion. Our supreme court has applied the abuse of discretion standard to challenges to expert testimony on the basis of an insufficient foundation. *People v. Williams*, 238 Ill. 2d 125, 136 (2010) ("We apply the abuse of discretion standard to the defendant's foundational challenge to the trial court's admission of *** expert testimony."); *People v. Sutherland*, 223 Ill. 2d 187, 281 (2006) (applying the abuse of discretion standard to the defendant's argument that the court erred in denying his motion to bar expert testimony regarding a test the expert had not performed herself); see also *Taylor*, 2011 IL 110067, ¶¶ 26-27 (holding that the abuse of discretion standard applied to a challenge to the admission of VHS tapes on foundation grounds). In light of this precedent, we disagree with the *Safford* court's holding. See *People v. Simmons*, 2016 IL App (1st) 131300, ¶¶ 110-14 (holding that the *Safford* court's application of a *de novo* standard of review was contrary to supreme court precedent).

¶ 27 We now turn to the substance of defendant's claim that the court erred in admitting Little's testimony regarding the GCMS testing because the State failed to lay an adequate foundation. "To lay an adequate foundation for expert testimony, it must be shown that the facts or data relied upon by the expert are of a type reasonably relied upon by experts in that particular field in forming opinions or inferences." *People v. Contreras*, 246 Ill. App. 3d 502, 510 (1993); see also Ill. R. Evid. 703 (eff. Jan 1, 2011). Also, "when expert testimony is based upon an electronic or mechanical device ***, the expert must offer some foundation proof as to the method of recording the information and proof that the device was functioning properly at the time it was used." *People v. Bynum*, 257 Ill. App. 3d 502, 514 (1994). "The expert must show that the electronic or mechanical device was in good working order when it was used by explaining how the machine is maintained and calibrated and why the expert knows the results are accurate." *People v. Thompson*, 2017 IL App (3d) 160503, ¶ 13.

¶ 28 Here, the court did not abuse its discretion in admitting Little's testimony. Admittedly, Little did not expressly testify that GCMS testing was reasonably relied upon by experts in her field, as the State failed to ask her this question. While it would have been preferable if Little had offered explicit testimony on this point, we believe that Little's testimony was sufficient to establish this foundational requirement. Little testified that the chemical color test and the GCMS test were "standard scientific tests." She also testified that her opinion that the substances at issue contained cocaine was within a reasonable degree of scientific certainty. Accordingly, the jury could infer that the data upon which Little relied in reaching her opinion—namely, the results of the GCMS tests—were of a type reasonably relied upon by an expert in the field. See *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472, 485 (1992) ("Where an expert testifies that his or her opinions are based on a reasonable degree of expert certainty within a given field, a jury may infer that the data upon which the expert relied were of a type reasonably relied upon by such an expert.").

¶ 29 Further, Little's testimony was sufficient to show that the GCMS instrument she used was working properly. Little testified that, at the time she performed the GCMS tests, the machines had been checked for accuracy and were in proper working order. Little explained that monthly "function checks" or "Autotunes" were performed on the GCMS instruments. She testified that function checks were performed on the machine she used approximately one month before her testing and one day after her testing. Both function checks indicated that "everything was fine" with the machines. Thus, Little's testimony indicated that the machines were maintained by performing monthly function checks, and she knew the results of the GCMS tests were accurate

because the monthly function tests showed that the machine she used was working properly. Admittedly, it would have been preferable if Little had described in more detail what an "Autotune" or "function check" entailed. However, the court's finding that Little's testimony established a sufficient foundation was not fanciful or unreasonable. See *Taylor*, 2011 IL 110067, ¶ 27.

¶ 30    Defendant argues that the holdings in *Bynum*, 257 Ill. App. 3d 502, and *Raney*, 324 Ill. App. 3d 703, support his argument that the State failed to lay an adequate foundation for Little's testimony. We find both cases to be factually distinguishable. In *Raney*, the court held that the State failed to establish the necessary foundation for admitting expert testimony regarding GCMS testing where the expert "did not provide any foundation proof that the GCMS machine was functioning properly at the time it was used." *Raney*, 324 Ill. App. 3d at 710. The court reasoned:

> "[The expert] was never asked whether the GCMS machine was functioning properly at the time it was used to test the substance ***. While she is not personally required to test the accuracy of the machine, at the very least she should be able to offer some testimony that the GCMS machine was functioning properly at the time it was used. There was no testimony verifying the accuracy of the GCMS machine. There was no evidence as to the policy or procedures maintained by her department regarding that specific GCMS machine to ensure that it was properly maintained in working order and would thereby provide accurate results. ***

> [The expert] failed to testify that before conducting the GCMS test of the suspected controlled substance the GCMS machine was working properly. She failed to indicate whether, for example, any testing was done to assess the operating condition of the GCMS machine. She also failed to indicate whether standards were run to test the accuracy of the GCMS machine. As a result, *this record contains no evidence regarding whether the GCMS machine was functioning properly at the time it was used to analyze the substance in this case*." (Emphasis added.) *Id.* at 708-09.

¶ 31    In the instant case, unlike in *Raney*, the record contained evidence regarding whether the GCMS machine was functioning properly when Little conducted the tests. Little testified that the GCMS machines had been checked for accuracy, were in proper working order, and received monthly function checks. Little eventually testified that a function check had been performed on the machine she used approximately one month before her testing and one day after her testing. These function checks showed that "everything was fine" with the machine.

¶ 32    This case is also factually distinguishable from *Bynum*, where the court found that there was an insufficient foundation for the expert's testimony regarding GCMS testing because the expert did not testify that the GCMS testing device was a device generally relied upon by experts in her field, did not explain how the machine was calibrated, and did not explain why she knew the results were accurate. *Bynum*, 257 Ill. App. 3d at 514. In the instant case, Little testified that the GCMS machines were in proper working order and had been tested for accuracy. She explained that the GCMS machines were calibrated through monthly "function checks" or "Autotunes." Like in *Bynum*, Little did not testify that the GCMS machine was generally relied upon by experts in her field. However, we believe that her testimony was sufficient to establish this foundational requirement. See *supra* ¶ 28.

¶ 33    Defendant correctly notes that the expert in *Martin v. Thompson*, 195 Ill. App. 3d 43, 46-47 (1990), gave a more detailed explanation of how a GCMS machine was calibrated. The

courts in both *Raney* and *Bynum* cited *Martin* for its recitation of the expert testimony regarding the calibration of a GCMS machine. See *Raney*, 324 Ill. App. 3d at 708-09; *Bynum*, 257 Ill. App. 3d at 514. While the expert's testimony regarding the calibration of the GCMS machine was less detailed in this case than in *Martin*, it was stronger than the foundation testimony in *Raney* and *Bynum*. *Supra* ¶¶ 29-31. Notably, in *Martin*, the issue of whether there was sufficient foundation to show that the GCMS machine was working properly was not before the court. See *Martin*, 195 Ill. App. 3d at 48-50. Accordingly, we find *Martin* to be of little pertinence in determining whether the court abused its discretion in admitting Little's testimony in this case.

¶ 34                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Tazewell County is affirmed.

¶ 36          Affirmed.